UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIONEL ROGERS,
          Plaintiff,


     V.                                    CIVIL ACTION NO.
                                           08-10684-MBB


GERALD L. COFIELD, JR.,
          Defendant.


**MEMORANDUM AND ORDER RE:**
**DEFENDANT GERALD COFIELD'S RENEWED MOTION FOR JUDGMENT**
**AS A MATTER OF LAW AND/OR NEW TRIAL (DOCKET**
**ENTRY # 64); DEFENDANT GERALD COFIELD'S**
**MOTION FOR REMITTITUR**
**(DOCKET ENTRY # 66)**

**December 8, 2011**

**BOWLER, U.S.M.J.**

Pending before this court are two post trial motions filed by defendant Gerald L. Cofield, Jr., an officer of the Boston Police Department ("Officer Cofield"), in this civil rights action challenging a jury award against him in the amount of $101,188.30.  Officer Cofield moves for judgment as a matter of law under Rule 50(b), Fed. R. Civ. P. ("Rule 50(b)"), on the 42 U.S.C. § 1983 ("section 1983") claim and for a new trial under Rule 59, Fed. R. Civ. P. ("Rule 59"), on the section 1983, the assault and the false arrest claims because the verdict is against the weight of the credible evidence or a miscarriage of justice.  (Docket Entry # 64).  In another motion, Officer

Cofield seeks a remittitur of the $101,188.30 past and future compensatory damages award.  (Docket Entry # 71).

<u>PROCEDURAL BACKGROUND</u>

This suit arises out of events that took place on December 5, 2004, at the area B-2 police station in Roxbury, Massachusetts.  After spending the day with his four children, plaintiff Lionel Rogers ("plaintiff"), who was in the process of a divorce, arrived at the police station, a prearranged drop off location for the children.  Plaintiff's then wife, Artemisa Monteiro-Rogers ("Monteiro-Rogers"), was waiting at the station along with a friend, Elizabeth Mercado ("Mercado"), for the scheduled 4:00 p.m. drop off.

Plaintiff arrived at the police station at approximately 5:30 p.m. after seeing an afternoon movie with his children.  The jury heard divergent accounts of what took place at the station once plaintiff arrived.  Eventually, plaintiff was booked for assault and battery on a police officer and disturbing the peace and released on bail.  On December 6, 2004, Officer Cofield applied for a criminal complaint citing the applicable statutes for the foregoing offenses.

Plaintiff initially brought suit against the City of Boston as well as Officer Cofield.  The ten count complaint alleged violations of section 1983 and the Massachusetts Civil Rights

Act[1] and common law claims for assault and battery, false imprisonment, negligent infliction of emotional distress, negligence, negligent hiring, malicious prosecution and abuse of process.  Prior to trial, plaintiff voluntarily dismissed the claims against the City of Boston and a number of claims against Officer Cofield, including the malicious prosecution claim.  As narrowed, the case tried before the jury consisted of section 1983 violations on the basis of a false arrest and excessive force and common law claims for false arrest, assault, battery and abuse of process.[2]

    After a four day trial, the jury returned a verdict in

_____

[1]   Mass. Gen. L. ch. 12, §§ 11H and 11I.

[2]   In accordance with the final pretrial order (Docket Entry # 27, ¶ 13), Officer Cofield requested jury instructions on an assault claim and a battery claim.  Plaintiff did not file proposed instructions except for the section 1983 claim and damages.  When asked off the record during the trial, plaintiff agreed to a separate submission of an assault claim and a battery claim.  Plaintiff also did not object to the submission of an assault claim and a battery claim to the jury in the instructions.  See Matthews v. Cordeiro, 2007 WL 4304268, *1-2 (1st Cir. Dec. 11, 2007) (no error not to instruct on "claim of assault and battery" given that "Matthews never presented the court with his own proposed instruction or explained how and why he thought the elements were distinct"); see generally House of Flavors, Inc. v. TFG Michigan, L.P., 2011 WL 2476499, *5 (1st Cir. June 23, 2011) (citing Rule 15(b), Fed. R. Civ. P., and explaining that, "Tetra had fair warning from December 2009 onward of the new direction the case was likely to take"); In re Schifano, 378 F.3d 60, 65 (1st Cir. 2004) (constructive amendment of complaint under Rule 15(b) to include claim under 11 U.S.C. § 727(a) because "both parties addressed § 727(a)(3) in the pre-trial report" and court addressed the claim on summary judgment).

plaintiff's favor on the section 1983, false arrest and assault claims and in Officer Cofield's favor on the battery and abuse of process claims.  The verdict form did not distinguish between the false arrest and excessive force theories of section 1983 liability.  Neither party objected to the verdict form or to the jury charge.[3]  The charge repeatedly instructed the jury not to award "duplicate damages" for "the same injury awarded on another claim."  (Docket Entry # 50, pp. 38, 49, 53 & 59).[4]

The verdict form asked the jury a general damages question for past compensatory damages in question seven and a second question for future compensatory damages in question eight.  At 4:00 p.m. on the first and only day of deliberations, the jury asked the following question, "On question # 8 future damages do we need to have a dollar amount or can we say something like legal fees for this trial?  How would we guess what they might

---

[3]  On April 6, 2011, this court provided the parties copies of the draft charge with case citations and quotations to support the elements and the damages for all causes of action.  (Docket Entry # 50).  On April 7, 2011, the parties agreed to a modification during a charge conference.  Thereafter, this court provided a final copy of the charge and the verdict form to the parties prior to closing arguments.  The parties reviewed the verdict form and expressed their satisfaction with it.  (Tr. IV-32).  After reading the finalized charge to the jury, neither party wished to be heard notwithstanding the opportunity.  (Tr. IV, p. 103).

[4]  For convenience, this court oftentimes cites to the charge containing the citations and legal authority for the language (Docket Entry # 50) as opposed to the same language in the transcript (Tr. IV).

be?"  With counsel for both parties in the courtroom, this court

drew their attention to the possibility that the jury might be

confused about future legal fees which the instructions did not

include.[5]  After discussing the issue, counsel for both parties

agreed to the following written response, "It requires a dollar

amount and I direct you back to the instructions on damages,"

whereupon the court security officer delivered the note and the

response back to the jury.[6]

Fifteen minutes later, Officer Cofield's counsel returned to

the courtroom wishing to be heard.  Apologizing for not bringing

the issue up earlier, Officer Cofield's counsel expressed concern

about the jury thinking it could award damages for the cost of

---

[5]  This court advised counsel that, "I want to be sure that
they're not confused about future legal fees, and there's
certainly nothing in the demand for future legal fees nor was
there anything in the instructions . . .."  (Tr. IV-107).

[6]  After this court asked counsel if they wished to see the
note and if they wished to be heard, counsel for Officer Cofield
stated that, "I think whatever the jury instructions say, you
know, the jury should do."  (Tr. IV-106).  When directed to the
possibility of juror confusion about future legal fees,
plaintiff's counsel posited that:

> I think they might be using an example, your Honor.  I'm not
> sure.  I mean, we're sort of reading tea leaves here, but, you
> know, it would seem to me the safest route is to say
> that you're only supposed to put a number down, and that you
> should follow the Court's instructions as to future damages,
> and they have the written instructions.

(Tr. IV-107).  After additional discussion, counsel for Officer
Cofield and plaintiff expressed their agreement on the record to
the given instruction.  (Tr. IV-108).

5

bringing suit under section 1983.  This court reminded counsel that she "had an opportunity," which counsel understood but nonetheless asked this court to further instruct the jury "not to speculate to award damages under section 1983."[7]  This court denied the untimely request.

At 4:50 p.m., the jury returned to the courtroom with a verdict.  The jury awarded plaintiff $26,188.30 in past compensatory damages in answer to question seven and $75,000.00 in future compensatory damages in answer to question eight.  The verdict form also asked the jury a factual question involving qualified immunity, to wit, whether "a reasonable policeman would have understood that the conduct of the defendant violated the plaintiff's right to be free from an unreasonable seizure of his person under the Fourth Amendment?"  (Docket Entry # 52, No. 11) (capitalization omitted).  The jury answered affirmatively.  A second qualified immunity question asked the jury what amount, if any, of the total compensatory damages awarded in questions seven and *nine*, "represents damages solely for the section 1983 claim above and beyond any damages you included for the state law

---

[7]  Contrary to Officer Cofield's memorandum in support of a remittitur, counsel did not ask "that the jury be specifically instructed that it not speculate or award damages to the Plaintiff for his legal fees in bringing his civil case against Ofc. Cofield."  (Docket Entry # 67, p. 3).  Rather, counsel only asked what the instructions in substance already included, to wit, instructing the jury not to speculate in awarding damages under section 1983.  (Docket Entry # 50, p. 34).

claims?"  (Docket Entry # 52, No. 12) (capitalization omitted).
The jury answered $26,188.30, i.e., the same amount the jury
awarded for past compensatory damages.

I.  <u>MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR A NEW TRIAL</u>

A.  <u>Judgment as a Matter of Law on Section 1983 Claim</u>

    The standard applicable to a motion for judgment as a matter
of law is well established.  Under Rule 50(b), a court can set
aside a jury verdict "'only . . . when "the evidence points so
strongly and overwhelmingly in favor of the moving party that no
reasonable jury could have returned a verdict adverse to that
party."'"  <u>Malone v. Lockheed Martin Corp.</u>, 610 F.3d 16, 20 (1st
Cir. 2010); <u>accord</u> <u>Mercado-Berrios v. Cancel-Alegria</u>, 611 F.3d
18, 22 (1st Cir. 2010) (Rule 50(b) motion "granted when '"facts
and inferences viewed in the light most favorable to the verdict
point so strongly and overwhelmingly in favor of the movant that
a reasonable jury could not have returned the verdict"'");
<u>Andrade v. Jamestown Housing Auth.</u>, 82 F.3d 1179, 1186 (1st Cir.
1996) (proper to allow motion where evidence "'would not permit a
reasonable jury to find in favor of the plaintiff on any
permissible claim or theory'"); <u>Acevedo-Diaz v. Aponte</u>, 1 F.3d
62, 66 (1st Cir. 1993) ("jury verdict may not be set aside . . .
except on a '"determination that the evidence could lead a

reasonable person to *only one conclusion*"'"') (emphasis in original).

Under Rule 50, the evidence is viewed "in the light most favorable to the verdict" and determines if "a rational jury could find in favor of the party who prevailed."  Soto-Lebron v. Federal Express Corp., 538 F.3d 45, 56 (1st Cir. 2008); accord Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010) (examining evidence "'and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict'").  Evidence and inferences reasonably extracted therefrom are viewed in the light most favorable to the nonmovant, i.e., in this instance plaintiff.  Martinez-Serrano v. Quality Health Services Of Puerto Rico, Inc., 568 F.3d 278, 284 (1st Cir. 2009) (court "must scrutinize the evidence and the inferences reasonably extractable therefrom in the light most hospitable to the nonmovant"); Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 214 (1st Cir. 2006) (court examines "'evidence and all reasonable inferences therefrom "in the light most favorable to the nonmovant"'" under Rule 50).  Finally, it is improper to resolve conflicts in the testimony or to evaluate the credibility of witnesses when ruling on a Rule 50(b) motion.  See Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 208 (1st Cir.

2006) (under Rule 50, court "'may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence'"); accord Webber v. International Paper Co., 417 F.3d 229, 233 (1st Cir. 2005) (Rule 50(b) requires viewing "all the evidence, reasonable inferences, and credibility determinations in the light most favorable to the nonmoving party").

As an initial matter, Officer Cofield submits that the jury is not allowed to go beyond plaintiff's version of the events and find Officer Cofield liable based on Officer Cofield's version of the events as a means to carry plaintiff's burden of proof on the section 1983 false arrest claim.  (Docket Entry # 65).  The argument contravenes the jury's ability to believe all or part of a witness' testimony and to assess the credibility and bias of each witness.  See United States v. Nishnianidze, 342 F.3d 6, 14 (1st Cir. 2003) ("the jury's duty is to assess credibility, and it may accept or reject, in whole or in part, any testimony"); Holt v. Deere & Co., 24 F.3d 1289, 1295 (10th Cir. 1994) ("[a]s sole judges of the witnesses' credibility, the jurors were entitled to accept or reject the testimony of any witness in whole or in part").  Although a jury cannot speculate or engage in conjecture, see Malone v. Lockheed Martin Corp., 610 F.3d at 22 (considering Rule 50 motion and recognizing that jury's

liability finding cannot rely on speculation and conjecture), it can accept part of a witness' testimony and part of another witness' testimony, even if those witnesses are parties offering their version of the events.[8]  In addition, review of a Rule 50 motion requires this court to "examine the record as a whole." Cruz-Vargas v. R.J. Reynolds Tobacco Co., 348 F.3d 271, 275 (1st Cir. 2003); accord Pequero-Moranta v. Santiago, 464 F.3d 29, 33 (1st Cir. 2006) (if "district court examined only the evidence presented in Plaintiffs' case when granting Defendants' renewed Rule 50(a) motion, this would be an error of law").  Viewed as a whole, the record shows the following.

### FACTUAL BACKGROUND[9]

In 1995, plaintiff sustained a back injury from a motor vehicle accident that led to a medical discharge from the United States Army.  Plaintiff managed the injury with physical therapy, massage, yoga, "shots in my back" and ultrasound.  (Tr. II-8). Plaintiff, who is presently 49 years old, settled in Boston after the army and worked in a number of jobs, eventually starting a t-shirt business, and also purchased houses and a restaurant.

---

[8]  In fairness, Officer Cofield acknowledges that a jury can believe "some of [plaintiff's] allegations."  (Docket Entry # 65).

[9]  Citations to the transcript are provided as a guide. They are not provided for all statements in the factual background or for all the statements of fact in the discussion section.

In 2004, plaintiff was legally separated from his wife of ten years, Monteiro-Rogers, and had four children through this marriage.  A court order set the location for the 8:00 a.m. drop off and 4:00 p.m. pick up of the children at the area B-2 police station.  On December 5, 2004, plaintiff arrived at the station at 8:00 a.m. to pick up his four children.  Monteiro-Rogers arrived with the children at 8:30 a.m. and the exchange took place without incident.

Plaintiff and his four children proceeded to enjoy the day together.  They went to a movie in the afternoon and purchased tickets for a 2:00 p.m. show in downtown Boston.  After settling the children in the theater, plaintiff left the theater to park his car in a nearby garage.  By the time he returned 20 minutes later, he had missed the beginning of the movie.  At the urging of two of his children, they went to see a 2:30 p.m. showing of the same movie down the hall in the same theater building.  By the time the movie ended, it was 4:20 p.m.  Plaintiff drove directly to the area B-2 police station arriving at approximately 5:30 p.m., in other words, 90 minutes late for the 4:00 p.m. pick up time.

Officer Cofield, a 1983 graduate of the Police Academy and a divorced father of two children, was working the front desk and arrived for his shift at 4:00 p.m.  He began working at the area B-2 station, which has "the highest . . . violent crime" in the

city (Tr. IV-7), in 1997.[10]  In addition to Officer Cofield at
the front desk, Diane Gill ("Officer Gill"), another police
officer, Juan Diaz ("Officer Diaz"), the booking officer,
Lieutenant Detective Patrick Cullity ("Lieutenant Cullity"), the
duty supervisor, and Detective Johnson were on duty at the
station.

Monteiro-Rogers arrived at the area B-2 police station to
pick up the children at or around 4:00 p.m.  Mercado arrived
awhile later but prior to plaintiff's 5:30 p.m. arrival.  At
least twice before plaintiff arrived, Monteiro-Rogers approached
Officer Cofield at the front desk and complained about
plaintiff's failure to return the children.  At some point,
Officer Cofield asked Monteiro-Rogers for paperwork consisting of
the court order relative to visitation.[11]  After Monteiro-Rogers
complained for the second time, Officer Cofield reported the
matter to Lieutenant Cullity which resulted in the dispatch of a
two man unit to the home of plaintiff's then girlfriend, Laura
Wilkerson ("Wilkerson"), who lived in Dorchester.  Lieutenant
Cullity thereafter stayed in the lobby talking to Monteiro-
Rogers.

The layout of the area B-2 police station consists of a

---

[10]  Officer Cofield presently works at police department
headquarters in the hackney and carriage division.

[11]  According to Officer Cofield, she did not have the
paperwork.

12

front entrance with a set of doors and a second and third set of
doors.  Once inside the lobby, there is a front desk behind
bullet proof glass.  A door next to the bullet proof glass goes
to the back of the station which includes a booking area, a cell
block and a desk for the duty supervisor.  The lobby also has
vending machines and a bulletin board.  (Tr. III-50, 53, 57 & 80-
81; Tr. II-17-18).

Plaintiff, in the meantime, was returning to the station
with the children when he received a telephone call from
Wilkerson as he pulled into the parking lot.  Wilkerson informed
plaintiff that two police officers had just left her house
looking for him and the children.

Plaintiff and his four children proceeded to get out of the
car and, with the children preceding him, plaintiff walked into
the station.  At this juncture, the record contains conflicting
and material testimony about what took place.  Based on the
conflicting testimony, a reasonable jury could find a number of
scenarios.  The following consists of a general summary of the
evidence and identifies a number of disputed facts.  The
discussion section sets out the scenarios that, construed in
plaintiff's favor, support the general verdicts[12] in accordance

---

[12] With the exception of a qualified immunity question, the
verdict form consisted of a series of questions regarding
liability on the various causes of action as opposed to questions
of fact or mixed questions of law and fact.  See Rule 49(a) and
(b), Fed. R. Civ. P. (distinguishing between special and general

with the standard required under Rule 50 in the context of
Officer Cofield's arguments.

When plaintiff walked into the lobby, Officer Cofield came
out into the lobby from the front desk.  He calmly asked
plaintiff to speak with him in an attempt to get information to

---

verdicts); Merchant v. Rhule, 740 F.2d 86, 89 n.2 (1st Cir.
1984).  The form contained a series of liability questions, one
question for each of the common law causes of action (assault,
false arrest and battery) and one for the section 1983 claim
thereby encompassing the two claims of excessive force and false
arrest.  Properly classified, the verdict form was a series of
general verdicts.  See Merchant v. Rhule, 740 F.2d at 88-89
(verdict sheet asking "'Did the plaintiff's injuries result in
whole or in part from the negligence of the defendant?'" and
similar question on another claim characterized as "two general
verdicts"); see also Babcock v. General Motors Corp., 299 F.3d
60, 63 n.1 (1st Cir. 2002) (noting alternative classification as
two general verdicts one question, "Has plaintiff proved her
negligence claim by a preponderance of the evidence?'" and
similar question on separate claim); Ramos v. Davis & Geck, Inc.,
224 F.3d 30, 32-33 (1st Cir. 2000) (question asking jury, "'Do
you find that the Defendant constructively discharged the
Plaintiff Rafael Ramos without just cause because of his age in
violation of Law 100?'" followed by damages question classified
as "general verdict"); Coy v. Simpson Marine Safety Equipment,
Inc., 787 F.2d 19, 27 (1st Cir. 1986); see, e.g., Zhang v.
American Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003)
("jury returned general verdicts, with separate determinations as
to damages," for various claims with majority asking, "'Do you
find for the plaintiff'" or "'What amount of damages . . . do you
award?'"); see generally Massachusetts Eye and Ear Infirmary v.
QLT Phototherapeutics, Inc., 552 F.3d 47, 73 (1st Cir. 2009).
The section 1983 verdict in question one was more general
inasmuch as it included two separate claims.  See Zhang v.
American Gem Seafoods, Inc., 339 F.3d at 1031 ("some general
verdicts are more general than others, encompassing multiple
claims").  Finally, for purposes of the forfeiture issue
addressed infra, the verdicts may be characterized as verdicts
within the scope of Rule 49(b), Fed. R. Civ. P. ("Rule 49(b)").
See Babcock v. General Motors Corp., 299 F.3d at 63 (classifying
similar verdicts as Rule 49(b) verdicts).  Either way, the same
forfeiture rule applies.  Id. at 63-64 & n.1.

complete a police report regarding Monteiro-Rogers' complaints.[13]
The children were with Monteiro-Rogers by this time.  There was
testimony that plaintiff appeared angry and did not acknowledge
Officer Cofield's requests to speak with him.  Officer Cofield
testified that at one point, plaintiff stated in a loud voice, "I
don't trust cops."[14]  (Tr. III-54; Tr. IV-53).

Officer Cofield testified that when plaintiff got loud and
ended up against a wall exhibiting bizarre behavior, he turned
his back from plaintiff to tell Monteiro-Rogers to take her
family and leave the building.[15]  Plaintiff then pushed Officer
Cofield from behind and, when Officer Cofield turned back to
plaintiff, plaintiff pushed him again, according to Officer
Cofield.[16]  Officer Cofield told plaintiff he was under arrest

---

[13]  Other evidence in the record, including plaintiff's
testimony and portions of Mercado's trial deposition testimony,
allows the jury to find that Officer Cofield was loud and/or
screaming at this time.  Mercado described Officer Cofield as
verbally abusive.  Although plaintiff has a loud voice and a
presence when he walks into a room, Mercado described him as
"acting normal" without a raised voice.  Once two of the officers
restrained him.  Later, however, Mercado heard plaintiff
screaming.  According to Mercado, plaintiff did not touch any of
the police officers.

[14]  Mercado testified by deposition that after plaintiff was
against the wall with his hands up, a screaming match ensued.

[15]  Lieutenant Cullity testified that plaintiff was yelling
and he therefore asked Monteiro-Rogers to step inside the police
work station and she complied.

[16]  Again, however, plaintiff's testimony, supported in part
by Mercado's testimony, provides evidence that plaintiff did not
push or touch Officer Cofield and was not loud at this point in

(Tr. III-100-101)[17] and proceeded to effect or attempt to effect an arrest for assault and battery on a police officer and disturbing the peace.

At this juncture, the jury could find that Officer Cofield only put his hands on plaintiff's chest at which point plaintiff dropped to the ground like dead weight.  (Tr. III-56). Alternatively, the jury could find that Officer Cofield grabbed plaintiff,[18] threw him against the wall in back of him, bent him over, kneed him in the stomach and threw him to the floor.[19] Plaintiff testified to feeling pain in his knee, back and upper body at this point.  He repeatedly asked Officer Cofield words to the effect, "[W]hy did you do that to me?" and  "What did I do wrong?"  (Tr. II-26).  At or around this time, Mercado and the children exited the building while Monteiro-Rogers remained behind.

_____

time.

[17] See Fed. R. Civ. P. 32(a)(3); F.R.E. 801(d)(2).  Officer Cofield elsewhere testified that he did not tell plaintiff he was under arrest.  As noted below, plaintiff testified that Officer Cofield told him he was under arrest after plaintiff got up from the ground where Officer Cofield had thrown him.

[18]  Medical records note that a police officer grabbed plaintiff and took him to the ground.

[19]  Mercado did not see any officer strike plaintiff or put his knee into plaintiff although she later saw an officer push him in the back.  Crediting part of plaintiff's testimony, see United States v. Nishnianidze, 342 F.3d at 14, the jury could find that Officer Cofield also threw plaintiff against the wall at which point he dropped to the ground.

16

While plaintiff was on the floor and Officer Cofield on top of plaintiff with his knee on plaintiff's back, three or four other police officers came through the door next to the front desk, according to plaintiff.[20]  Plaintiff testified that one or more officers picked him up and that Officer Cofield told him to put his hands behind his back and, according to plaintiff, told him he was under arrest.  Plaintiff acknowledges that he "got loud" when told he was under arrest.  (Tr. II-27).

With Officer Cofield holding plaintiff's hands behind his back,[21] plaintiff started walking towards the door with other officers behind them, according to plaintiff.[22]  (Tr. II-28-29). When plaintiff and Officer Cofield got to or near the door or were going through the door, plaintiff testified that he felt the hard push in the middle of his back and fell to the ground hitting his face and knee.[23]  Mercado, looking back from the parking lot through a window, testified that she saw "other

---

[20]  This fact is disputed.

[21]  Officer Cofield testified that he did not use handcuffs. (Tr. III-57-58).  Conversely, Mercado testified that she saw plaintiff put in handcuffs and taken to the back.

[22]  This fact is also disputed.  At one point, Officer Cofield testified that he tried to pull plaintiff towards the door.  (Tr. III-102).  Alternatively, the jury could find that Officer Cofield dragged plaintiff the estimated ten feet from the wall to a point two feet before the door to the cell block.  (Tr. III-109-111); see Fed. R. Civ. P. 32(a)(3).

[23]  Officer Cofield denies pushing plaintiff.

officers" restraining plaintiff by putting his hands behind his back and pushing him in the back.  Officer Cofield fell on top of plaintiff.  While still on the floor, plaintiff testified that he telephoned Wilkerson screaming and yelling into the phone.  (Tr. III-9; Tr. II-32-33).  Wilkerson received the telephone call, recognized plaintiff's voice and heard him screaming and yelling. (Tr. III-9).

Meanwhile, Lieutenant Cullity testified that he brought Monteiro-Rogers to the work station behind the door to the front desk and was speaking to her when he heard a banging noise from the lobby area.  Lieutenant Cullity went out into the lobby at which point he observed plaintiff on the ground.  Officer Gill, who was assigned to the front desk as was Officer Cofield, also came out from the front desk and into the lobby.[24]

Lieutenant Cullity then picked plaintiff up and escorted him to the booking desk with Officer Gill.  At this juncture, Lieutenant Cullity told Officer Cofield to step away and Officer Cofield testified he "was done with" plaintiff at that time.[25] (Tr. III-57; Tr. IV-14-15).

Plaintiff remained upset but eventually calmed down as the

---

[24] As previously noted, the point of arrival of these other officers is materially disputed.

[25] Lieutenant Cullity testified at one point that he arrested plaintiff and at another time that he assisted Officer Cofield with the arrest.  (Tr. IV-17 & 26-27).

18

booking process progressed.  At the booking area, plaintiff was handcuffed to a pole.  (Tr. II-31; Tr. III-140).  Officer Diaz completed the arrest booking form setting out the charges as assault and battery on a police officer under section 13D of Massachusetts General Laws chapter 265 ("section 13D")[26] and disturbing the peace under section 53 of Massachusetts General Laws chapter 272 ("section 53").[27]  (Ex. B).  A few hours later,

_____

[26]  As explained in LaFrenier:

Under Mass. Gen. Laws ch. 265, § 13D, a person commits the offense of assault and battery on a police officer if he engages in "purposeful and unwelcomed contact with a person the defendant knows to be a law enforcement officer actually engaged in the performance of official duties."  United States v. Santos, 363 F.3d 19, 23 (1st Cir. 2004) (quoting United States v. Fernandez, 121 F.3d 777, 778 (1st Cir. 1997)).

LaFrenier v. Kinirey, 478 F.Supp.2d 126, 136 (D.Mass. 2007). Mercado testified that plaintiff never touched any of the police officers and did not raise his voice.  She also testified that Officer Cofield was right in front of plaintiff's face and in his face.  She saw officers drive plaintiff to the ground at one point.

[27]  Section 53:

proscribes activities which, first, most people would find to be unreasonably disruptive, and second, did in fact infringe someone's right to be undisturbed.  The first prong is normative and protects potential defendants from prosecutions based on individual sensitivities.  The second prong requires that the crime have a victim, and thus subjects potential defendants to criminal prosecution only when their activities have detrimental impact.

Commonwealth v. Orlando, 359 N.E.2d 310, 312 (Mass. 1977).  "Time and place are factors to be considered in determining whether activities are 'unreasonably disruptive.'"  Commonwealth v. Federico, 876 N.E.2d 479, 483 (Mass.App.Ct. 2007) (quoting

Officer Cofield completed an incident report.  (Ex. 3).  On December 6, 2004, Officer Cofield completed an application for a criminal complaint charging plaintiff with violating section 13D and section 53.  (Ex. 6 & 9).

A few hours after plaintiff completed the booking process, Wilkerson went to the police station with her brother.  After Wilkerson provided bail to a bail bondsman, plaintiff came into the lobby appearing as if he were in pain.  Wilkerson's brother assisted plaintiff in getting into the car and they went back to Wilkerson's house without stopping at a hospital.  Wilkerson testified that plaintiff was limping and appeared in a lot of pain.  During the next week or two weeks, plaintiff "laid on the bed mostly," according to Wilkerson.  (Tr. III-12-14).  Plaintiff concurred that he stayed in bed a little more than a week icing his knee and putting heat on his back.

On December 7, 2004, plaintiff sought medical attention at the Veterans Affairs Hospital in Jamaica Plain, Massachusetts.  Plaintiff complained of lower back and left knee pain.  The progress note reflects a past medical history that includes "Lumbar Radiculopathy" and "Intervertebral Disk Displacement." (Ex. 4).  The assessment in the progress note states, "Back pain same.  No new radicular symptoms.  No need for imaging at this time."  (Ex. 4).  It also notes the existence of a bruised knee

---

Commonwealth v. Orlando, 359 N.E.2d at 312).

post trauma.  Seth N. Schonwald, M.D. changed plaintiff's
existing 600 milligram prescription of ibuprofen four times a day
to 800 milligrams three times a day.  Plaintiff underwent
additional treatment for his knee at the hospital in 2005.

On December 14, 2004, plaintiff sought medical treatment for
his back at the Advanced Spine Center in Roxbury, Massachusetts.
The history of the incident in the initial report states that
plaintiff walked into the police station with his children "when
a police officer grabbed him and took him to the ground."[28]
There were "[n]o visible lacerations, bleeding, or abrasions"
noticed.  (Ex. 2).  Past medical history notes the prior back
injury with a permanent disability rating of 40% and left knee
pain from a previous injury.  The diagnoses reflects "[a]cute
lumbosacral sprain/strain" and "[l]eft knee sprain/strain."  (Ex.
2).

Anthony J. Piscitelli, D.C. ("Piscitelli"), a chiropractor
at the center, prescribed a treatment regimen of chiropractic
adjustments and therapeutic exercises.  Plaintiff underwent
chiropractic treatment and electrical stimulation with hot and
cold packs at the Advanced Spine Center until June 2005.  Bills
totaled $6,085.00.  Piscitelli's discharge evaluation reflects

---

[28]  The note fails to reflect the additional testimony by
plaintiff that Officer Cofield not only grabbed him but "threw
[plaintiff] against the wall, bent [him] over, kneed [him] in the
stomach and threw [him] on the floor."  (Tr. II-24).

plaintiff's symptoms as related to the December 5, 2004 incident.

A few days after the December 5, 2004 incident, plaintiff received a copy of the criminal complaint charging him with assault and battery on a police officer in violation of section 13D and disorderly conduct in violation of section 53.  (Ex. 7; Tr. II-46 &51).  Legal proceedings regarding the charges continued for a year and a half until a dismissal of the complaint for want of prosecution on June 1, 2006.  Plaintiff incurred legal fees for these proceedings in the amount of $20,103.30.[29]

## DISCUSSION

Citing Rule 50, Officer Cofield asserts that "'reasonable persons could not have reached the conclusion the jury embraced'" on the section 1983 claim.  (Docket Entry # 65).  Initially, he submits that plaintiff can only recover if he proved his version of events.  Furthermore, a jury could not believe plaintiff's version (being grabbed, thrown against the wall, kneed in the stomach and thrown to the ground twice) without finding a battery, according to Officer Cofield.  Because the jury did not find a battery, Officer Cofield contends that the jury did not believe plaintiff's version of events.  Because the jury did not

---

[29]  Officer Cofield emphasizes that the legal fees ($20,103.30) plus the chiropractic bills for the Advanced Spine Center ($6,085.00) total the exact amount the jury assessed as past compensatory damages, $26,188.30.

believe plaintiff's version of events because it did not find a
battery, Officer Cofield reasons that the jury found no liability
under the section 1983 excessive force claim because both this
claim and the battery claim require excessive and unreasonable
force.  In other words, Officer Cofield asserts that because the
reasonableness of the force analysis is the same for a battery
and a section 1983 excessive force claim, the jury's "no
liability on the battery claim necessitates a finding of no
liability on the § 1983 excessive force claim."[30]  (Docket Entry
# 65, p. 6).  Continuing the same reasoning, the jury found
section 1983 liability only on the false arrest theory, according
to Officer Cofield.[31]

Officer Cofield also submits that believing plaintiff's
version of events (Officer Cofield grabbed him, threw him against
the wall, kneed him in the stomach and then threw him to the
ground twice) is the only way the jury could find liability on
the section 1983 false arrest claim.  Because the jury did not
believe plaintiff's testimony because otherwise the jury would

---

[30]  The district court cases Officer Cofield cites, <u>Moreau v.
Gerardi</u>, 2010 WL 4961676, *12 (D.Mass. Nov. 24, 2010); <u>Parker v.
Town of Swansea</u>, 310 F.Supp.2d 356, 369 (D.Mass. 2004);
<u>Jesionowski v. Beck</u>, 937 F.Supp. 95, 105 (D.Mass. 1996),
uniformly rely on a First Circuit case, <u>Dean v. City of
Worcester</u>, 924 F.2d 364, 369 (1st Cir. 1991) ("<u>Dean</u>").

[31]  As previously noted, the verdict form did not distinguish
between the section 1983 false arrest claim and the section 1983
excessive force claim.

have found a battery, the jury could not find an unlawful
seizure, according to Officer Cofield.  In other words, the
evidence to support the battery verdict is inconsistent with the
section 1983 excessive force verdict, according to Officer
Cofield.  Officer Cofield adds that plaintiff could not meet his
burden of proof by relying on conclusory statements.

"'[I]t is the duty of the courts to attempt to harmonize' a
jury's findings 'if it is possible under a fair reading of
them.'"  Raiche v. Pietroski, 623 F.3d 30, 37 (1st Cir. 2010)
(quoting Gallick v. Baltimore & O. R. Co., 372 U.S. 108, 119
(1963), in parenthetical).  This court turns to this task in the
context of Officer Cofield's arguments.

A.   The No Battery and Section 1983 Excessive Force Argument

One of Officer Cofield's primary arguments is that, "Because
the reasonableness of the force analysis for a common law battery
mirrors that of a § 1983 excessive force claim, a finding of no
liability on the battery claim necessitates a finding of no
liability on the § 1983 excessive force claim."  (Docket Entry #
65, p. 6).  The import of Officer Cofield's argument is that the
battery and section 1983 excessive force verdicts must be
consistent or, stated conversely, cannot be inconsistent.  See,
e.g., In re Vivendi Universal, S.A. Securities Litigation, 765
F.Supp.2d 512, 549 (S.D.N.Y. 2011) ("[i]t appears that Vivendi's
real argument with respect to scienter is that the verdict was

24

inconsistent to the extent that the jury found Vivendi liable, but exonerated Hannezo and Messie").  Although Officer Cofield does not use the terminology of inconsistent verdicts, an unpublished Sixth Circuit case characterizes the exact same argument as a challenge to inconsistent verdicts.  <u>Frohmuth v. Metropolitan Government of Nashville and Davidson County, Tennessee</u>, 2004 WL 1238919, *2 (6th Cir. Aug. 19, 2004) (inconsistency challenge wherein "Welch argues that a finding that he did not commit assault and battery under state law necessitates a finding that he did not use excessive force under federal law").[32]  Accurately framed, Officer Cofield's argument is that the section 1983 excessive force verdict is subject to judgment as a matter of law because it is inconsistent with the battery verdict given the overlapping use of force requirement.  <u>See</u> <u>Fabri v. United Technologies International, Inc.</u>, 387 F.3d 109, 121 (2nd Cir. 2004) ("[a]lthough defendants frame their challenge to the verdict as a challenge to the sufficiency of the evidence, . . . . defendants' sufficiency challenge is truly an attack on the consistency of the contract and CUTPA verdicts"); <u>Wennik v. Polygram Group Distribution, Inc.</u>, 304 F.3d 123, 130 (1st Cir. 2002) (argument that "jury's verdict in its favor on

---

[32]  As an unpublished decision, this court does not rely on the decision as precedent.  Rather, the decision simply illustrates the nature of the argument Officer Cofield presents in substance if not by name.

the age discrimination claim precludes a finding that PolyGram's articulated reasons were pretext for handicap discrimination" construed as inconsistency challenge even though "PolyGram contends that this argument does not amount to a claim that the verdicts were inconsistent"); Malmsteen v. Berdon, LLP, 595 F.Supp.2d 299, 307 (S.D.N.Y. 2009) (rejecting the defendants' position "that they are not asserting an inconsistent verdict, but rather 'arguing that the only consistent reading of the verdict'" requires judgment as a matter of law) (internal brackets omitted).

　　1. Waiver

　　Where, as here, a party raises an inconsistency challenge, the analysis begins with a classification of the verdict form. See Merchant v. Ruhle, 740 F.2d 86, 88-89 (1st Cir. 1984) ("we first must determine whether we are dealing with two general verdicts or a general verdict and answers to interrogatories under Fed.R.Civ.P. Rule 49(b)"); see also Kosmynka v. Polaris Industries, Inc., 462 F.3d 74, 85 (2nd Cir. 2006) ("the step needed to preserve an objection to an inconsistent verdict depends on the type of verdict employed"); see, e.g., Davis v. Rennie, 264 F.3d 86, 104-105 (1st Cir. 2001).  Here, as explained in footnote 12, the verdict form was neither a special verdict nor a general verdict with answers to interrogatories under Rule 49(b), Fed. R. Civ. P. ("Rule 49(b)").  See Merchant v. Ruhle,

740 F.2d at 89.   Rather, like the verdict sheet at issue in
Merchant, the questions and answers were both comprehensive and
conclusory essentially asking the jury to determine liability on
the various causes of action.   As such, the verdict form
constituted a series of general verdicts.[33]   See id. ("first and
second questions and answers are in such comprehensive and
conclusory terms as to constitute essentially general verdicts on
the two counts of the complaint in all respects but damages");
see also Ramos v. Davis & Geck, Inc., 224 F.3d 30, 32-33 (1st
Cir. 2000).

In order to warrant judgment as a matter of law on the
section 1983 excessive force verdict and evidence to support it
as not consistent with the battery verdict, it was incumbent upon
Officer Cofield to object to the discrepancy before this court
discharged the jury.   See  Babcock v. General Motors Corp., 299
F.3d at 63 n.1 (objections to allegedly inconsistent special
interrogatories "must be raised before the jury is discharged"
and "*the same is true for allegedly inconsistent general
verdicts*") (emphasis supplied); accord Bartee v. Michelin North

---

[33] Alternatively, as also stated in footnote 12, the
verdicts can be construed as subject to Rule 49(b).   See Babcock
v. General Motors Corp., 299 F.3d at 63 (classifying similar
verdicts as Rule 49(b) verdicts).   If the inconsistent verdicts
on the battery and section 1983 excessive force claim are subject
to Rule 49(b), the case for forfeiture is even stronger because
the express and specific procedural rule in Rule 49(b)(4)
applies.

America, Inc., 374 F.3d 906, 911 (10th Cir. 2004) ("failure to object to general jury verdicts on the ground of inconsistency before the jury is discharged constitutes waiver); Mason v. Ford Motor Co., Inc., 307 F.3d 1271, 1275-1276 (11th Cir. 2002) (because jury rendered "two general verdicts . . ., Ford's failure to raise its objection before the jury was discharged waived the right to contest the verdicts on the basis of alleged inconsistency"); Howard v. Antilla, 294 F.3d 244, 247 & 250-251 (1st Cir. 2002); Merchant v. Ruhle, 740 F.2d at 89-92; see also Masure v. Donnelly, 962 F.2d 128, 134 (1st Cir. 1992) ("by failing to point out the alleged inconsistency before the jury was discharged, Donnelly waived this argument"); McIsaac v. Didriksen Fishing Corp, 809 F.2d 129, 134 (1st Cir. 1987) (Wise, who raised inconsistency eight days after jury's discharge "would not be entitled to a reversal even if we found that the jury's verdict was inconsistent, since it failed to make a timely objection to the alleged inconsistency") (addressing verdict consisting of "special answers").

Here, Officer Cofield did not object to the anticipated lack of consistency before this court discharged the jury.  See McIsaac v. Didriksen Fishing Corp., 809 F.2d at 134 ("[g]iven the ample circumstances portending possible verdict inconsistency, we hold that Wise waived the issue by failing to object after the verdict was read and before the jury was discharged").  By

failing to object at the only efficient time to cure the
discrepancy between the battery verdict and the subsumed section
1983 excessive force verdict in question one,[34] Officer Cofield
forfeited the challenge to the section 1983 excessive force
verdict based upon the battery verdict.  See Zhang v. American
Gem Seafoods, Inc., 339 F.3d at 1035-1036 (collecting authority);
Fernandez v. Chardon, 681 F.2d 42, 58 (1st Cir. 1982) (because
the defendants "waited until after the jury was excused before
raising the inconsistency claim," they "waived their right to
have the general verdict set aside on this ground").

     In fact, the forfeiture rule in this circuit is "well
established."  Howard v. Antilla, 294 F.3d at 250 (disapproving
district court's decision to entertain "challenge to consistency
of the verdict").  By failing to raise an objection to the
verdicts prior to the jury's discharge, the defendant "thereby
forfeit[s] any right to challenge the inconsistency by way of a
subsequent motion for new trial or motion for judgment as a
matter of law."  Id. at 250-251 (collecting First Circuit
precedent) (also noting that "district's court's attempt to
reconcile the jury's findings was essentially gratuitous").  With

---

     [34] For example, if Officer Cofield had objected to the
discrepancy at that time, this court could have submitted two
additional questions to the jury asking:  (1) do you find by a
preponderance of the evidence that plaintiff proved the necessary
elements of his section 1983 false arrest claim; and (2) do you
find by a preponderance of the evidence that plaintiff proved the
necessary elements of his section 1983 excessive force claim.

respect to the scope of the waiver, Officer Cofield waived any argument, including a sufficiency challenge to the extent based on a requirement of consistency between the battery and the section 1983 excessive force verdicts.  See Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 421 (8th Cir. 2005) (waiving any argument "to the extent based on inconsistency of the verdicts" due to failure to object before jury discharged); Austin v. Paramount Parks, Inc., 195 F.3d 715, 726 (4th Cir. 1999) ("litigant's failure to raise an inconsistency before the jury is discharged . . . precludes that litigant from relying upon the inconsistency to challenge an adverse disposition").

    2.  Plain Error Review

Although not free from doubt, First Circuit case law subjects waived inconsistency challenges to plain error review. See Howard v. Antilla, 294 F.3d at 251 n.10 ("[t]o the extent Antilla's forfeited claim of inconsistency might still be reviewed for 'plain error,'" there is no such error); Babcock v. General Motors Corp., 299 F.3d at 64 ("unless there is plain error, we cannot grant relief on GM's claim that the jury's inconsistent liability findings rendered invalid its finding that GM was negligent"); Wennik v. Polygram Group Distribution, Inc., 304 F.3d at 130 (finding verdicts inconsistent and, "to the

extent" reviewed under plain error, finding no such error).[35]

Plain error review is successful only where "(1) there be error;
(2) the error was 'plain' (i.e. obvious and clear under current
law); (3) the error affected substantial rights; and (4) the
error threatened a miscarriage of justice." Babcock v. General
Motors Corp., 299 F.3d at 65.   Similarly stated, the First
Circuit adheres to "the Supreme Court's general formulation,
first used in criminal cases, requiring the party claiming plain

_____

[35] A recent unpublished First Circuit case provides the
following accurate and succinct summary of the law:

>   "Objections to the inconsistency of verdicts must be made
>   after the verdict is read and before the jury is
>   discharged." Babcock v. Gen. Motors Corp., 299 F.3d 60, 63
>   (1st Cir. 2002); see also Kenda, 329 F.3d at 223 n.4.
>   Failure to object timely renders the claim waived or
>   forfeited and, at most, subject to only plain error review.
>   Babcock, 299 F.3d at 63-64 (applying plain error review to
>   unpreserved inconsistent verdict claim deemed forfeited);
>   see also Uphoff Figueroa v. Alejandro, 597 F.3d 423, 435 n.
>   15 (1st Cir. 2010) (finding inconsistent verdict claim
>   waived and afforded no review because party failed to object
>   before jury was dismissed); Wennik v. Polygram Grp.
>   Distrib., Inc., 304 F.3d 123, 130 (1st Cir. 2002) (finding
>   inconsistent verdict claim waived and, at most, entitled to
>   plain error review).

International Floor Crafts, Inc. v. Dziemit, 2011 WL 1499857, *8
(1st Cir. April 21, 2011).   That said, this court does not rely
on International Floor Crafts as binding precedent.   See Rule
32.1, Fed.R.App.P. ("court may not prohibit or restrict the
citation of federal judicial opinions . . . that . . . . (ii)
issued on or after January 1, 2007"); LR. 32.1, United States
Court of Appeals for the First Circuit (allowing citation to
unpublished First Circuit opinions "regardless of the date of
issuance" but considering such opinions "for their persuasive
value" and "not as binding precedent").

error to demonstrate (1) that there was error, (2) that it was plain, (3) that it likely altered the outcome, and (4) that it was sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial proceeding." Gray v. Genlyte Group, Inc., 289 F.3d 128, 134 (1st Cir. 2002) (citing United States v. Olano, 507 U.S. 725, 735-736 (1993)).

The error at issue is this court's acceptance of allegedly inconsistent verdicts. See generally Babcock v. General Motors Corp., 299 F.3d at 65 (finding it was not clear error for district court to enter judgment on the jury's verdict). The existence of an error, its obviousness and whether it likely altered the outcome depends upon the overlapping elements of the battery and section 1983 excessive force claims placed in the context of the facts.

Officer Cofield is correct that a section 1983 excessive force claim and a battery claim overlap in the context of an arrest. An essential element of a section 1983 excessive force claim is the use of unreasonable force under the Fourth Amendment. See Parker v. Gerrish, 547 F.3d 1, 8-9 (1st Cir. 2008). In determining the reasonableness of the force used, the Fourth Amendment inquiry in the context of an arrest includes an analysis of the severity of the crime, whether the suspect poses an immediate safety threat and whether he is actively resisting arrest. Id. (quoting Jennings v. Jones, 499 F.3d 2, 11 (1st Cir.

2007), quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989) ("Graham")).[36]

Second and more to the point, the courts in Graham and Jennings recognize that, "'[T]he right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" Jennings v. Jones, 499 F.3d at 11 (quoting Graham, 490 U.S. at 396). The First Circuit in Dean[37] quoted this provision in Graham relative to a section 1983 excessive force claim and, in the circumstances of that case, equated it to a principle applicable to a common law assault and battery claim under Massachusetts law, to wit, "that 'an officer authorized to make an arrest may use "such force as is reasonably necessary to effect the arrest."'" Dean v. City of Worcester, 924 F.2d at 369 (quoting Julian v. Randazzo, 403 N.E.2d 931 (Mass. 1980)

---

[36] To provide greater detail, Parker explains:

"To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances . . . There must be 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

Parker v. Gerrish, 547 F.3d at 8-9 (quoting Jennings v. Jones, 499 F.3d at 11, quoting Graham, 490 U.S. at 396-97).

[37] Officer Cofield relies on Dean and a number of district court cases. See footnote 29.

("Randazzo"), quoting section 3.07 of the Model Penal Code).   The
Dean court further reasoned that because "the Randazzo standard
is essentially the same as the fourth amendment analysis required
under Graham," the summary judgment finding that the force used
to effectuate the arrest "was objectively reasonable in fourth
amendment terms" under Graham "controls the 'reasonableness'
determination required on Dean's common law claims for assault
and battery as well."   Id.; see Julian v. Randazzo, 403 N.E.2d at
934 (noting in case involving claims including assault and
battery against two police officers "that the person attempting a
valid arrest has the right to use the force which is reasonably
necessary to overcome physical resistance by the person sought to
be arrested"); Aceto v. Kachajian, 240 F.Supp.2d 121, 127
(D.Mass. 2003) (noting in context of assault and battery claim
under Massachusetts law that, "An officer authorized to make an
arrest may use such force as is reasonably necessary to effect
the arrest") (internal quotation marks and citations omitted);
see also Wargo v. Municipality of Monroeville, PA, 646 F.Supp.2d
777, 789 (W.D.Pa. 2009) ("[b]ecause no reasonable jury could
conclude that the force used by [the defendants individual police
officers] was excessive, no underlying tort claims of assault and
battery against" the defendants "would lie").   Thus, as noted by
the First Circuit in Raiche in the context of an excessive force
section 1983 claim against a police officer conducting an arrest,

"our determination of the reasonableness of the force used under
§ 1983 controls our determination of the reasonableness of the
force used under the common law assault and battery claims."
Raiche v. Pietroski, 623 F.3d at 40; accord Nolan v. Krajcik, 384
F.Supp.2d 447, 472 (D.Mass. 2005) (because "standard for
determining whether force is reasonable for assault and battery
claims is essentially the same as the standard for determining if
force is reasonable for Fourth Amendment excessive force claims,
. . . the plaintiff's assault and battery claims will rise or
fall in the same manner as his Fourth Amendment claims")
(internal quotation marks and citations omitted).

Third, however, plaintiff correctly points out that the
battery and the section 1983 excessive force claims are not
mirror images.  The elements of civil battery in Massachusetts
additionally require:  (1) the defendant to act intending to
cause a harmful or offensive contact; and (2) for a harmful or
offensive contact to directly or indirectly result.[38]  Waters v.

---

[38]   The elements of the battery claim also overlap the
elements of the assault claim.

Assault, under Massachusetts tort law, requires that the
defendant "act[ed] intending to cause a harmful or offensive
contact" with plaintiff, "or an imminent apprehension of
such a contact," and that plaintiff was "thereby put in such
imminent apprehension."  Restatement (Second) of Torts §
21(1) (1965); see also Conley v. Romeri, 60 Mass.App.Ct.
799, 806 N.E.2d 933, 939 n. 6 (Mass.App.Ct. 2004).

Kennedy v. Town of Billerica, 617 F.3d 520, 538 (1st Cir. 2010).
This first element is the same as the foregoing first element of

35

<u>Blackshear</u>, 591 N.E.2d 184, 185 (Mass. 1992).  Although a finding of unreasonable force under the Fourth Amendment controls the determination of the reasonableness of force used under a battery claim, <u>see</u> <u>Raiche v. Pietroski</u>, 623 F.3d at 40; <u>Dean v. City of Worcester</u>, 924 F.2d at 369, a battery claim requires additional elements which, if not proven, may allow for a battery verdict in favor of the liable party under the section 1983 excessive force verdict.  <u>See</u>, <u>e.g.</u>, <u>Carter v. Chicago Police Officers M.L.</u>, 165 F.3d 1071, 1080 (7th Cir. 1998) ("comparison between the state of mind required for the jury to find Moore and Price liable on the state and federal claims aptly demonstrates that a finding of liability on the federal claims did not necessarily mandate a finding of liability on the state claims").

In particular, the necessary intent with respect to a section 1983 excessive force claim and a battery claim differs. Civil battery is an intentional tort with the intent being "'to cause a harmful or offensive contact . . . or an imminent apprehension of such a contact.'"  <u>Waters v. Blackshear</u>, 591

---

a battery claim.  <u>See</u> <u>Restatement (Second) of Torts</u> §§ 13(a) & 21(1)(a) (1965); (Docket Entry # 50, pp. 50-52).  The difference between the battery and the assault claims lies in the second element of the torts.  Battery requires that "'a harmful contact with the person of the other directly or indirectly results.'" <u>Waters v. Blackshear</u>, 591 N.E.2d at 185 (quoting <u>Restatement (Second) of Torts</u> § 13 (1965)).  Assault requires "that [the] plaintiff was 'thereby put in such imminent apprehension.'" <u>Kennedy v. Town Of Billerica</u>, 617 F.3d at 538 (quoting <u>Restatement (Second) of Torts</u> § 21(1) (1965)).

N.E.2d at 185.  "A result is intended if the act is done for the purpose of accomplishing the result or with knowledge that to a substantial certainty such a result will ensue."  Id.  The Waters court thus affirmed an allowance of a motion for judgment notwithstanding the jury verdict because the uncontroverted evidence showed that the minor defendant, who placed and lit a firecracker in the shoe of an unsuspecting seven year old, "acted intending to cause a harmful contact."  Id. at 186; see also Button v. Trimble, 2001 WL 1763963, *3 (Mass.Super. Sept. 27, 2001) (the defendant's intentional touching of the plaintiff, which startled her causing her to fall from her chair to the floor, was an intentional act which, absent consent to the touching or justification, created liability in battery).

The intent at issue in a section 1983 excessive force claim is simply the intentional detention or taking.  See Brower v. County of Inyo, 489 U.S. 593, 596-597 (1989) (Fourth Amendment "requires an intentional acquisition of physical control" in sense that "detention or taking itself must be willful"); see also Farrah ex rel. Estate of Santana v. Gondella, 725 F.Supp.2d 238, 244 (D.Mass. 2010) (section 1983 excessive force claim requires the plaintiff to show "termination of his freedom of movement 'through means intentionally applied'") (quoting Brower v. County of Inyo, 489 U.S. at 597).  The reasonableness of the

force used is determined and analyzed under an objective

standard.  See Parker v. Gerrish, 547 F.3d at 8-9 (reasonableness

of force used to effect seizure "'is objective, to be determined

"in light of the facts and circumstances confronting [the

officers], without regard to their underlying intent or

motivation"'"); accord Graham v. Connor, 490 U.S. at 397

("officer's evil intentions will not make a Fourth Amendment

violation out of an objectively reasonable use of force; nor will

an officer's good intentions make an objectively unreasonable use

of force constitutional"); Gutierrez v. Massachusetts Bay

Transportation Authority, 722 N.E.2d 552, 559 (Mass. 2002) (it is

immaterial in section 1983 excessive force claim "whether the

police officer had a subjective intent to harm the plaintiff")

(citing Graham v. Connor, 490 U.S. at 397).

To summarize, the section 1983 excessive force claim and the

assault and battery claims correlate in the determination of the

reasonableness of the force used by police to effect an arrest.[39]

---

[39]  Plaintiff agrees.  (Docket Entry # 70).

The cases on which the Defendant relies note a correlation
between Section 1983 excessive force claims and common law
assault and battery claims.  A "determination of the
reasonableness of the force used under Section 1983 controls
[the] determination of the reasonableness of the force used
under the common law assault and battery claims."  Raiche v.
Pietroski, 623 F.3d 30, 40 (1st Cir. 2010) (citing Dean v.
City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991)).

(Docket Entry # 70).

The battery claim differs from the section 1983 excessive force claim because it requires (1) the defendant to act intending to cause a harmful or offensive contact; and (2) for a harmful or offensive contact to result.  Applied to the facts, however, these differences do not avoid the existence of an error.

Turning to the facts and mindful of the duty to view the battery and section 1983 verdicts as consistent if possible, see Davignon v. Hodgson, 524 F.3d 91, 112 (1st Cir. 2008) (recognizing "duty to read the jury's verdicts consistently if possible"), Officer Cofield came out the door from the front desk and yelled at plaintiff with a loud voice a number of times that he needed to talk to him.  (Tr. II-22; Tr. III-53).  Plaintiff remained compliant.  Officer Cofield then rushed over to plaintiff, who was gesturing with his hands up in a noncombative manner,[40] and got "right in [plaintiff's] face."  (Tr. II-23; Tr. III-102).  Mercado likewise testified in part that plaintiff's hands were "up where people can see," he did not put his hands on anyone or touch any of the police officers and the officer was in plaintiff's face.[41]  Officer Cofield was just under six feet tall

---

[40]  The transcript of plaintiff's testimony references only gesturing.  This court observed the gesturing first hand.

[41]  Portions of Mercado's deposition were read into the record.  The trial transcript simply states that portions were read but does not transcribe the testimony.  Hence, this court does not provide citations to the record for the direct quotations.

39

and then weighed 225 pounds whereas plaintiff was just under five feet, eight inches tall and weighed 190 pounds.  (Tr. III-79; Tr. II-24).  Plaintiff "got scared" and backed up but Officer Cofield "kept coming" until plaintiff stopped at which point Officer Cofield was right in plaintiff's face.  (Tr. II-23).  Reasonably inferring that plaintiff backed up to a point near or against the wall, Officer Cofield remained right in plaintiff's face.[42]  (Tr. II-23; Tr. III-94-95).  Officer Cofield continued "yelling and screaming" right in plaintiff's face about plaintiff's wife trying to file a complaint against him and that he was "supposed to be here at 4:00" p.m.  (Tr. II-23).

Such facts provide sufficient evidence for the assault verdict.[43]  There was, however, no evidence of a contact or touching on the part of Officer Cofield at this time thereby explaining and supporting the jury's defendant favorable battery verdict.  Likewise, the jury could find that Officer Cofield had not decided to arrest plaintiff until he turned to box plaintiff

---

[42]  Mercado similarly testified that plaintiff ended up against the wall with the police officer in front of him.  She also testified that plaintiff never touched or struck any of the police officers.

[43]  Officer Cofield does not attack the assault verdict under Rule 50(b).  Officer Cofield's Rule 50(b) motion seeks to overturn only the section 1983 claim.  Thus, this court is not making a ruling upholding the assault verdict.  Instead, the above facts show that the jury could and did believe portions of plaintiff's testimony in reaching the plaintiff favorable assault verdict even when placed in the context of the battery verdict.

out at which time plaintiff allegedly pushed him in the back.
(Tr. II-56, 78, 85, 86, 89, 93-96 & 98-101).  Hence, at this
time, there was no determination relative to Officer Cofield's
use of reasonable force to effect an arrest.[44]

Continuing with the facts construed to be consistent with
the battery and section 1983 excessive force verdicts and thus
avoid an error in accepting the verdicts, after yelling and
screaming at plaintiff right in his face with plaintiff backed
against the wall, Officer Cofield turned his back to plaintiff.
Officer Cofield testified that plaintiff pushed him from behind
(Tr. III-97) whereas plaintiff denied touching Officer Cofield
(Tr. II-34).[45]  Mercado likewise never saw plaintiff touch or put
his hands on any of the police officers.  Officer Cofield then
turned back towards plaintiff to effect the arrest.  (Tr. III-56,
98-101 & 105).  He told plaintiff "you're under arrest," (Tr.
III-100-101); see Fed. R. Civ. P. 32(a)(3); (Tr. II-27), and,

---

[44]  Put another way, at this juncture there had been no
arrest and, hence, no finding that Officer Cofield employed
reasonable force to effect an arrest to thereby avoid liability
for battery.

[45]  As an aside, construing the evidence in plaintiff's
favor, the jury could find that plaintiff did not push Officer
Cofield when Officer Cofield's back was turned or again when
Officer Cofield was facing plaintiff.  As such, the jury could
find probable cause lacking for an arrest for assault and battery
on a police officer.  The jury could also find probable cause
lacking for disturbing the peace because the evidence
sufficiently supports a finding that plaintiff was
nonconfrontational and not loud at this point in time.

from a position that was right in plaintiff's face, he either put

his hands on plaintiff's chest or grabbed plaintiff with both

hands near a shoulder, i.e., a battery absent the use of

reasonable force to effect the arrest.  (Tr. III-76 & 101-103).

Plaintiff was not combative or loud until being told he was under

arrest.[46]  (Tr. II-27).  A jury could also find that plaintiff

immediately fell to the ground like dead weight with or without

Officer Cofield throwing plaintiff against the wall immediately

in back of him.[47]

    Three or four other officers came out the door, according to

plaintiff, thus reducing the need for force to effect the

arrest.[48]  (Tr. II-26).  Officer Cofield then either dragged or

---

[46]  Mercado's testimony about a screaming match and Officer
Cofield's testimony about plaintiff's ranting and raving allow
for a contrary conclusion.

[47]  If Officer Cofield threw plaintiff against the wall, bent
him over, kneed him in the stomach and threw him to the floor
(Tr. II-24), no reasonable jury could find the absence of a
harmful contact to plaintiff or that Officer Cofield did not act
in a manner intending to cause a harmful contact.  See Waters v.
Blackshear, 591 N.E.2d at 185.  Such a finding would go directly
against the battery verdict.
    The jury could avoid finding a battery on these facts only
by finding the use of force reasonable to effect the arrest.
Such a finding, however, is inconsistent with a plaintiff
favorable section 1983 excessive force verdict.  Hence, for
purposes of assessing plain error, the jury did not make this
finding.

[48]  In contrast, Officer Cofield testified that he got
plaintiff as far as two feet away from the door leading to the
cell block before other officers came through the door.  (Tr.
III-109-113).  The arrival of officers at a later point increases
a need to use greater force prior thereto because of the greater

pulled plaintiff up to a point two feet from the door leading to

the cell block area or, according to plaintiff, he began walking

towards the door with Officer Cofield holding his arms behind his

back.[49]  (Tr. III-102-103 & 108-111; Tr. II-28-29).  Given

Officer Cofield's approximation of 12 feet from the wall to the

door, he dragged or pulled plaintiff over a space of

approximately ten feet.  (Tr. III-108-111).

Officer Cofield may also have given plaintiff a push or a

hard push in the middle of his back at which point plaintiff fell

forward hitting the ground face first with his arms down onto the

cement floor.[50]  (Tr. III-102-105).  Either while trying to lift

---

safety threat without the officers in the immediate vicinity and
the resistance of plaintiff to being placed under arrest insofar
as he was loud upon being told he was under arrest.  Lieutenant
Cullity's testimony provides additional support to finding a
later arrival of the officers.

[49]  If plaintiff walked to the door, then such a finding
supports the battery verdict but leads to an inconsistent
defendant favorable section 1983 excessive force verdict.
Dragging and pulling constitute intentional acts to bring about a
harmful or offensive contact with such a contact to plaintiff
directly or indirectly resulting.  See generally Waters v.
Blackshear, 591 N.E.2d at 185.  The only means to avoid a
plaintiff favorable battery finding is a determination that the
use of force to effect the arrest was reasonable which, in turn,
is inconsistent with the plaintiff favorable section 1983
excessive force verdict.

[50]  According to Mercado, plaintiff was handcuffed at this
time.  She did not describe the push as hard or soft.  Plaintiff
testified that he felt a "hard push in his back," fell and
Officer Cofield fell on top of him.  Officer Cofield denied
pushing plaintiff.  (Tr. III-72-73).  Officer Cofield testified
that plaintiff just fell to the ground.
The police report reflects only one fall.  The evidence is

plaintiff up, while plaintiff was getting up or when plaintiff
fell forward, Officer Cofield fell over plaintiff and cut his
hand.  (Tr. III, pp. 57, 102-103 & 109-110).  Lieutenant Cullity
and Officer Gill had Officer Cofield step away.  Along with
Officer Gill, Lieutenant Cullity then brought plaintiff through
the door and the booking process was thereafter completed without
incident with plaintiff handcuffed to a pole.

Turning to the law relative to the section 1983 excessive
force claim and mindful of the facts found by the jury to support
the battery verdict,[51] it is well settled that "'not every push
or shove rises to the level of a constitutional violation.'"
LaFrenier v. Kinirey, 478 F.Supp.2d 126, 138 (D.Mass. 2007)
(quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 205
(1st Cir. 1990)); see Graham v. Connor, 490 U.S. at 396 ("'[n]ot

disputed as to whether one or two falls occurred.
    In any event, if there was a push, there was also a battery
absent a finding that Officer Cofield used reasonable force to
effect the arrest.  A use of such reasonable force, however,
would go against the plaintiff favorable section 1983 excessive
force verdict.

    [51] As previously discussed, if the jury found that Officer
Cofield grabbed plaintiff, threw him against the wall, bent over
him, kneed him in the stomach and threw him to the floor, they
would have found a resulting harmful contact and that Officer
Cofield acted in a manner intending to cause a harmful or
offensive contact.  The jury, however, found that Officer Cofield
did not commit a battery.  Thus, although the entirety of such
facts support the use of excessive and unreasonable force to
effect an arrest, the battery verdict for purposes of assessing
plain error compels a finding that Officer Cofield did not engage
in this conduct.

every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment") (citation omitted).  Examining the <u>Graham</u> factors, disturbing the peace in violation of section 53 is a misdemeanor.  <u>See</u> <u>Wagenmann v. Adams</u>, 829 F.2d 196, 208 (1st Cir. 1987).  Assault and battery on a police officer, however, is a felony and presents a more serious crime warranting a greater use of force.  <u>See</u> <u>LaFrenier v. Kinirey</u>, 478 F.Supp.2d at 139 (assault and battery on a police officer is "sufficiently serious to warrant the exercise of force"); <u>see</u> <u>also</u> <u>United States v. Dancy</u>, 640 F.3d 455, 466-470 (1st Cir. 2011) (assault and battery on police officer qualifies under Armed Career Criminal Act's residual clause); <u>cf.</u> <u>Parker v. Gerrish</u>, 547 F.3d at 9 (examining seriousness of offence under <u>Graham</u> and noting it was not a crime of violence under the Armed Career Criminal Act).

As to the second <u>Graham</u> factor, plaintiff was not attempting to evade arrest by flight but he acknowledged he was loud once told he was under arrest and was either dragged or pulled towards the door.[52]  To a certain degree, plaintiff's acknowledged loud behavior shows he was resisting arrest.  Also crediting

---

[52]  Viewing the facts in plaintiff's favor to support an excessive use of force, he was dragged approximately ten feet. As previously explained, however, these facts directly contradict the battery verdict.  The battery verdict compels a finding that the jury credited plaintiff's testimony that he started walking towards the door.  (Tr. II-28-29).

plaintiff's testimony, three or four officers were present thus
reducing the threat posed to other officers and individuals in
the vicinity and the concomitant need for force.  The setting of
the arrest in a lighted police station in the presence of other
officers reduced the need to use force.  As a prearranged court
drop off for the children, however, the need for a police station
speaks to the potential volatility of the exchange.

Examining the force used "from the perspective of a
reasonable officer on the scene," <u>Graham</u>, 490 U.S. at 396, and
taking into account the need to make split decisions in a rapidly
evolving chain of events,[53] <u>see</u> <u>Parker v. Garish</u>, 547 F.3d at 9,
the facts when construed consistently with the battery verdict
are not sufficient for the jury to find that the force was
unreasonable under the totality of the circumstances.  If Officer
Cofield dragged and pulled plaintiff across the cement floor,
that finding would contradict the battery verdict absent a
finding that the use of force was reasonable to effect the
arrest.  Likewise, a push in the middle of plaintiff's back would
inevitably require a plaintiff favorable battery verdict absent
the use of reasonable force to effect the arrest.  Throwing
plaintiff against the wall and to the ground likewise constitutes

---

[53]   There was no testimony that the events were long or drawn
out.  Officer Cofield testified that "everything was happening so
quick."  (Tr. III-56).  Mercado testified that, "It happened
fast."

a battery.[54]  Without these facts which all require a finding of
reasonable force to effect the arrest to validate the battery
verdict, there was no excessive and unreasonable force in
violation of the Fourth Amendment.

Taking into account the entire totality of the
circumstances, there is no combination or set of facts that both
support the battery verdict and the section 1983 excessive force
verdict.  In short, Officer Cofield is correct that the battery
verdict, given the facts necessary to arrive at such a verdict,
does not leave room for a reasonable jury to find in plaintiff's
favor on the section 1983 excessive force claim.

Furthermore, the battery and the section 1983 excessive
force verdicts are not only inconsistent but this court cannot
reconcile these verdicts.  This court has a duty to reconcile the
verdicts "by exegesis if necessary."  Davignon v. Hodgson, 524
F.3d at 109.  The battery verdict shows that Officer Cofield did
not act intending to bring about a harmful contact and that no
harmful contact occurred.  See Waters v. Blackshear, 591 N.E.2d
at 185.  Without Officer Cofield engaging in any harmful contact
with plaintiff it is difficult if not impossible to posit a
series of facts that allow the jury to find he used excessive
force.  If the jury found he used reasonable force to effect the
arrest as the basis for the battery verdict, that finding is

---

[54]  See also footnote 52.

inevitably inconsistent with the section 1983 excessive force
verdict.  Both the Fourth and Sixth Circuits have considered the
interplay between a section 1983 excessive force and assault and
battery verdicts or interrogatories and found divergent verdicts
or interrogatories inconsistent.  See Stallworth v. City of
Cleveland, 893 F.2d 830, 832-833 (6th Cir. 1990); Carter v.
Rogers, 805 F.2d 1152, 1158 (4th Cir. 1986) ("we do not perceive
on the facts of this case how the factfinder could find for
Carter on one cause of action [assault and battery] and not on
the other [section 1983 excessive force]" because "[u]nreasonable
or unnecessary force was the touchstone of both causes of
action").  Having tried to reconcile the verdicts by exegesis, it
is simply not possible.

Accordingly, it was error to accept the jury's battery and
section 1983 excessive force verdicts.  The error was obvious
given the overlap in the use of reasonable force to effect an
arrest.  The jury instructions set out the overlap of the section
1983 excessive force and the battery claims in the area of
reasonable force to effect an arrest.  It is also likely that the
error altered the outcome by affecting the result of the jury's
deliberations.  See Ji v. Bose Corp., 626 F.3d 116, 126 (1st Cir.
2010) (noting requirement in the similar area of plain error vis-
à-vis jury instructions that error likely alters outcome "only if
the error could have affected the result of the jury's

deliberations") (internal brackets and quotation marks omitted).

That said, it is extremely difficult to find plain error in a civil case.  As recently reiterated by the First Circuit, "'The standard is high, and "it is rare indeed for a panel to find plain error in a civil case."'"[55] Sony BMG Music Entertainment v. Tenenbaum, 2011 WL 4133920, *14 (1st Cir. Sept. 16, 2011).  In affirming the lack of plain error in the lower court's forfeiture finding based on the defendant's failure to object to inconsistent verdicts before the jury's discharge, the First Circuit in Babcock deemed the following reasons sufficient:  the defendant's representation "by highly skilled counsel" who understood "that the plaintiff was asserting a claim for negligent testing"; the defendant's waiver of "any claim that the special verdict form was unacceptable"; and the defendant's waiver of "any claim that the verdicts are inconsistent" by failing to object to the verdict before the jury's discharge notwithstanding the opportunity.  Babcock v. General Motors Corp., 299 F.3d at 65.

Here too, represented by two talented and articulate, albeit

---

[55]   As also noted by a number of courts, "'consistent jury verdicts are not, in themselves, necessary attributes of a valid judgment in a civil action.'"  Cash v. County of Erie, 2011 WL 3625093, *15 (2nd Cir. Aug. 18, 2011) (quoting Globus v. Law Research Services, Inc., 418 F.2d 1276, 1290 n.17 (2nd Cir. 1969), in parenthetical with internal brackets omitted); Montgomery County v. Microvote Corp., 320 F.3d 440, 451 (3rd Cir. 2003) (same).

young, attorneys at trial, Officer Cofield was well aware of the differences between the section 1983 excessive force claim and the battery claim. The day before closing argument, this court gave the parties, including Officer Cofield, a written copy of the instructions complete with citations to legal authority depicting the differences as well as the commonality in the area of the use of unreasonable force in the section 1983 excessive force and battery claims. Provided with a copy of the verdict form before closing argument, Officer Cofield expressed his satisfaction. He did not request a bumper before the battery question requiring the jury to find in plaintiff's favor on the section 1983 excessive force claim subsumed in question one in order to answer battery question. When the jury returned with a verdict, this court inquired if counsel wished to be heard. (Tr. IV-112). Officer Cofield declined the opportunity to clarify the inconsistency.[56] The "yes" answer to the section 1983 liability question encompassing both excessive force and false arrest was inconsistent with the "no" answer to the battery verdict question. There was no surprise. See Howard v. Antilla, 294 F.3d at 250 (refusing to entertain inconsistency challenge because the inconsistency "should not have been a surprise");

_____

[56] Officer Cofield did ask to poll the jury about the $75,000.00 in future damages awarded to ensure it did not represent compensation for the cost of bringing this suit. ((Tr. IV-112). Hearing nothing further, this court discharged the jury.

McIsaac v. Didriksen Fishing Corp., 809 F.2d at 134 (rejecting inconsistency challenge because there were "ample circumstances portending [the] possible verdict inconsistency"). If, instead, the jury answered question one "yes" because it found Officer Cofield liable only on the basis of the false arrest theory, it was incumbent upon Officer Cofield to uncover the discrepancy before this court discharged the jury. Simply stated, the error did not threaten a miscarriage of justice or the fairness and integrity of the proceedings.

On balance, there was no plain error. The battery verdict does not necessitate a finding of no liability on the section 1983 excessive force verdict.

B. Jury's Failure to Believe Plaintiff's Version of Events and Related Arguments

Officer Cofield maintains that the jury could not believe plaintiff's version of events (being grabbed, thrown against the wall, kneed in the stomach and thrown to the ground twice) without finding a battery. Because the jury did not find a battery, Officer Cofield contends that the jury did not believe plaintiff's version of events and therefore could not find in his favor on the section 1983 claims.[57]

Officer Cofield also argues that because the jury did not

---

[57] As to the section 1983 excessive force verdict, the argument is waived as previously discussed.

believe plaintiff's version of events, it cannot examine Officer
Cofield's testimony or version to satisfy plaintiff's burden of
proof.  As indicated above, however, portions of plaintiff's
testimony and portions of Officer Cofield's and Mercado's
testimony support the foregoing version of events.

In any event, Officer Cofield's insistence that the jury
either believed the entirety of plaintiff's testimony that he was
grabbed, thrown up against the wall, kneed in the stomach and
thrown to the ground twice or it rejected the entirety of
plaintiff's testimony contravenes the ability of the jury to
believe part or all of a witnesses' testimony.  See Holt v. Deere
& Co., 24 F.3d at 1295 ("[a]s sole judges of the witnesses'
credibility, the jurors were entitled to accept or reject the
testimony of any witness in whole or in part").  Similarly,
Officer Cofield's segmentation of the testimony into plaintiff's
version, Officer Cofield's version and Mercado's version and the
jury's acceptance of one over the other version ignores the
jury's ability to judge credibility, see Holt v. Deere & Co., 24
F.3d at 1295, to determine excessive and unreasonable force based
on all of the circumstances, see Jennings v. Jones, 499 F.3d at
11 ("a plaintiff must show that the defendant officer employed
force that was unreasonable under the circumstances" and "[t]here
must be "careful attention to the facts and circumstances of each
particular case"), this court's obligation to view the record as

a whole, see Cruz-Vargas v. R.J. Reynolds Tobacco Co., 348 F.3d at 275 (court required to "examine the record as a whole" in evaluating Rule 50 motion), and the jury's ability to accept all or part of a witness' testimony, see Holt v. Deere & Co., 24 F.3d at 1295.

The cases Officer Cofield cites[58] to support that the jury was prohibited from going beyond plaintiff's version of events and using Officer Cofield's version as a means for plaintiff to carry his burden of proof are distinguishable.[59]  Unlike this case, the Der case involved an alleged instructional error concerning the burden of proof.  See Der v. Connolly, 2011 WL 31498, *1 (D.Minn. Jan. 5, 2011).  The case stands for the principle that the plaintiff bears the burden of proof in a section 1983 action involving a warrantless search or arrest. See id. at *2-3.  At the outset, the court explained that any instructional error in assignment of the burden of proof would only matter in the event of a tie breaker wherein the jury found

_____

[58]  Der v. Connolly, 2011 WL 31498 (D.Minn. Jan. 5, 2011) ("Der"); Savoie v. Chevron Texaco, 2006 WL 2795460 (E.D.La. Sept. 27, 2006) ("Savoie"); Universe Tankships, Inc. v. United States, 388 F.Supp. 276 (E.D.Pa. 1974) ("Universe Tankships"); Perley v. Perley, 10 N.E. 726 (Mass. 1887) ("Perley").

[59]  Officer Cofield's position that he was not required to prove an alternate version of facts to successfully defend the section 1983 or common law claims is correct.  It does not, however, lead to a conclusion that requires the jury only to examine plaintiff's version of the events in order to find in plaintiff's favor.

the evidence equally weighted on either side.  <u>Id.</u> at * 1.

Officer Cofield relies on dicta in which the court noted this was

not such a case because the jurors "returned a quick and emphatic

verdict that made it clear that they rejected the Ders' version

of events and credited Connolly's."  <u>Id.</u>  Officer Cofield also

cites the court's reasoning that if the defendant had the burden

of proof, "The plaintiff would merely need to file a § 1983

action against a defendant, and, unless the defendant could prove

that he acted lawfully, the plaintiff would prevail."  <u>Id.</u> at *

2.

  "Dictum constitutes neither the law of the case nor the

stuff of binding precedent."  <u>Dedham Water Co. v. Cumberland</u>

<u>Farms Dairy, Inc.</u>, 972 F.2d 453, 459 (1st Cir. 1992); <u>see also</u>

<u>Kosereis v. Rhode Island</u>, 331 F.3d 207, 213 (1st Cir. 2003).

Dicta in a district court case outside this district is even less

persuasive.  Moreover, although "courts may give weight to

dictum," <u>Cleary v. Knapp Shoes, Inc.</u>, 924 F.Supp. 309, 316

(D.Mass. 1996), the dicta in <u>Der</u> is not integral or necessary to

the court's holding.  Such dicta does not serve as a bar to

prevent the jury from looking at Officer Cofield's testimony to

support its verdict.

  The principle in <u>Savoie</u> that the plaintiffs "offered no

evidence to controvert the [d]efendants' *arguments*" on *summary*

*judgment*, <u>Savoie v. Chevron Texaco</u>, 2006 WL 2795460, *4 (E.D.La.

Sept. 27, 2006) (emphasis added), does not mean that plaintiff cannot rely on evidence offered *at trial* by Officer Cofield.  The court in Universe Tankships, 388 F.Supp. at 287 (bench trial in which court relied on physical damage to ship rather than testimony by plaintiff's witnesses), relied on evidence other than that proffered by the plaintiff's witnesses.  Here too, this court relied in part on evidence other than that of plaintiff's witnesses albeit to reach a decision upholding the verdict.  The Perley decision simply addressed "the burden of proof in an action upon a promissory note" as including "the burden of proving a consideration."  Perley v. Perley, 10 N.E. at 728.

As a final matter, in light of Officer Cofield's waiver, the applicable standard or review under Rule 50 instructs that the battery verdict does not limit the facts considered to support a challenge to the section 1983 excessive force verdict.  As noted above, Officer Cofield waived his ability to challenge the section 1983 excessive force verdict based on any requirement that it be consistent or, stated otherwise, not inconsistent with the battery verdict.  Therefore, as explained in Lavoie, the evidence is not limited to facts that support both the battery and the section 1983 excessive force verdict:

> Pacific attempts to limit review of the evidence supporting a negligence claim by suggesting we consider only that theory of negligence that might co-exist with a finding of no strict liability.  Having already determined that Pacific

55

waived its objection based on an inconsistency, if any, in the verdicts, our review is not limited to the sufficiency of the evidence of that theory of negligence which is reconcilable with a finding that the manufacturer is not strictly liable.

Lavoie v. Pacific Press & Shear Co., a Division of Canron Corp., 975 F.2d 48, 57 (2nd Cir. 1992); accord Fabri v. United Technologies Intern., Inc., 387 F.3d at 122-123 (examining sufficiency of evidence under Rule 50 motion and "[p]utting aside any inference that might be drawn from the verdict on the contract claim" which was inconsistent with the verdict on the challenged claim); see also Montgomery County v. Microvote Corp., 320 F.3d at 451 (even if verdict on breach of warranty claim was inconsistent with verdict on contract claim, "there is sufficient evidence to support the verdict on the breach of warranty claim and 'consistent jury verdicts are not, in themselves, necessary attributes of a valid judgment'");[60] Arthur Pew Const. Co., Inc. v. Lipscomb, 965 F.2d 1559, 1571 (11th Cir. 1992) (disapproving "court's holdings on reliance" which "seem to imply that the negligence and promissory estoppel verdicts had to be consistent, and that the negligence verdict failed because they were not"). Put another way, a "[c]ourt does not look at whether the verdict is internally inconsistent; rather, it looks at whether the challenged verdict should stand."  Madura v. City of North Miami

---

[60]  See footnote 55.

Beach, 2011 WL 3627265, *2 (S.D.Fla. Aug. 17, 2011);[61] see Chaney v. City of Orlando, 483 F.3d 1221, 1251 (11th Cir. 2007) (reversing district court's allowance of Rule 50(b) motion because court erroneously viewed evidence through the lens of the jury's verdicts and not whether evidence was sufficient to support the challenged excessive force issue).

Viewing all of the facts and reasonable inferences in favor of the section 1983 verdict, they do not overwhelmingly point in Officer Cofield's favor such that the jury could not have returned the plaintiff favorable section 1983 verdict. See Mercado-Berrios v. Cancel-Alegria, 611 F.3d at 22 (Rule 50(b) motion allowed where "'"facts and inferences viewed in the light most favorable to the verdict point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have returned the verdict"'"). In particular, sufficient evidence exists for a jury to find in plaintiff's favor on either the false arrest or excessive force section 1983 claims.

---

[61] The Madura court applied this standard irrespective of a waiver of an inconsistency challenge and to verdicts strikingly similar to those in the case at bar. In Madura, the plaintiff obtained a favorable assault and battery verdict and the remaining defendant police officer obtained a favorable verdict on the section 1983 excessive force claim for which the City of North Miami Beach was liable. Madura v. City of North Miami Beach, 2011 WL 3627265, at *2.

Examining the section 1983 false arrest claim, there was ample and sufficient evidence for the jury to find that plaintiff established a section 1983 false arrest claim by a preponderance of the evidence.[62]  Officer Cofield rushed over to plaintiff who was calm and agreeing to his requests.  A jury could find that Officer Cofield got right in plaintiff's face and was screaming at him while plaintiff was backing up to the wall.  Plaintiff did not push or touch Officer Cofield and, according to plaintiff, was not raising his voice or acting in a combative manner. Rather, plaintiff was compliant, cooperating and agreeing to Officer Cofield's requests to speak with him.  He was not creating a disturbance.  Even though plaintiff did not push Officer Cofield, who had his back turned to face the family, Officer Cofield turned back to plaintiff, and three or four other officers came rushing out from the door leading to the cell block.  Officer Cofield told plaintiff he was under arrest and proceeded to effect that arrest.  He told plaintiff "you're under arrest" (Tr. III-100-101); see Fed. R. Civ. P. 32(a)(3); (Tr. II-27), see F.R.E. 801(d)(2), and, from a position that was right in plaintiff's face, he either put his hands on plaintiff's chest or grabbed plaintiff with both hands near a shoulder.  At that point, a jury could find that Officer Cofield did not have probable cause to reasonably find that plaintiff had or was

---

[62]  See footnote 45 and related text.

58

committing the offenses of assault and battery on a police officer, disturbing the peace or even engaged in disorderly conduct.[63]

Thereafter, a jury could find that plaintiff was, at most, raising his voice and not otherwise creating a disturbance or disobeying a police order.  Sufficient evidence also exists to find that plaintiff walked to the door and, when Officer Cofield pushed him in the middle of his back, he fell.  Officer Cofield fell on top of him.  Lieutenant Cullity helped plaintiff get back on his feet and, together with Officer Gill, escorted plaintiff through the door and to the booking desk.  The booking proceeded without incident.

The constitutionality of a warrantless arrest "depends . . . upon whether, at the moment the arrest was made, the officer had probable cause to make it."  Beck v. Ohio, 379 U.S. 89, 91 (1964) (internal brackets omitted); Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997).  Using an objective test, "[p]robable cause exists 'when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee

---

[63]  See footnotes 25 and 26.  The above facts took place prior to the time Officer Cofield threw plaintiff against the wall and prior to any battery.  As such, neither the facts to support it nor the section 1983 false arrest verdict is inconsistent with the battery verdict.

likely is one of the perpetrators.'" <u>Cox v. Hainey</u>, 391 F.3d 25,

31 (1st Cir. 2004).  Without resolving the conflicting evidence

or assessing plaintiff's credibility, a reasonable jury could

easily find in plaintiff's favor on the section 1983 false arrest

claim.

Turning to the section 1983 excessive force claim, the jury

could find the following facts.  When plaintiff entered the

police station, Officer Cofield almost immediately began yelling

and screaming at him about being late.  He repeatedly demanded

that plaintiff talk to him even through plaintiff repeatedly

agreed to talk to him.  Officer Cofield then charged plaintiff

and, with plaintiff backed up against the wall, yelled and

screamed right in plaintiff's face.  Plaintiff was not refusing

to speak to Officer Cofield or being disobedient or unruly.

Plaintiff did not scream or raise his voice to Officer Cofield at

this point in time.  When Officer Cofield turned his back to

plaintiff to allegedly box him out, plaintiff did not push

Officer Cofield.

Officer Cofield then turned back to plaintiff and proceeded

to effect an arrest.  A jury could find that when Officer Cofield

turned back to plaintiff, Officer Cofield threw him against the

wall, bent him over, kneed him in the stomach and threw him onto

the floor.  With plaintiff on the ground, Officer Cofield put his

knee on plaintiff's back and told Monteiro-Rogers to take the

children and leave.  (Tr. II-25).  Three or four other officers
came out the door, according to plaintiff, thus reducing the need
for force to effect the arrest.  (Tr. II-26).  Officer Cofield
and possibly another officer picked plaintiff up off the ground.
Officer Cofield told plaintiff to turn around and put his hands
behind his back.  Plaintiff complied.

A jury could find that Officer Cofield told plaintiff he was
under arrest (Tr. III-100-101; Tr. II-27) at which point
plaintiff became loud.  Alternatively, sufficient evidence exists
to find that Officer Cofield did not tell plaintiff he was under
arrest.  (Tr. III-56).  Even if plaintiff became loud, a jury
could find that he was only questioning what he did wrong (Tr.
II-27) and by saying loudly, "'I'm not resisting arrest'" and
"What did I do?"

Officer Cofield then dragged or pulled plaintiff
approximately ten feet to a point two feet from the door leading
to the cell block area.  Holding plaintiff's arms behind his
back, Officer Cofield gave plaintiff a hard push in the middle of
his back as they were going through the door.  (Tr. II-28-29).
Plaintiff fell forward hitting the cement floor face first with
his arms down.  Officer Cofield fell on top of plaintiff onto his
back and leg.  Plaintiff's cellular telephone fell out of his
pocket.  In an excited and emotionally distraught state,
plaintiff took the phone, speed dialed Wilkerson and yelled that

61

the police were attacking him.  See generally United States v. Cruz, 156 F.3d 22, 30 (1st Cir. 1998).

Officer Cofield tried to pick plaintiff up but Lieutenant Cullity and Officer Gill had him step away.  Lieutenant Cullity then picked plaintiff up off the ground and along with Officer Gill brought plaintiff through the door and to the booking area. One of the officers then handcuffed plaintiff to a pole and the booking process proceeded without incident.

A few hours later, Wilkerson picked plaintiff up at the station along with her brother.  Plaintiff was limping and appeared to be in a lot of pain.  He needed assistance to get into the car.  For the most part, he stayed in bed during the next one to two weeks.

On December 7, 2004, he sought medical attention at the Veterans Affairs Hospital.  Medical notes reflect plaintiff's complaint of being "thrown into a wall" on December 5, 2004. (Ex. 4).

On December 14, 2004, plaintiff sought medical treatment for his back at the Advanced Spine Center.  As previously noted, the history of the incident in the initial report states that plaintiff walked into the police station with his children "when a police officer grabbed him and took him to the ground."[64]  From

---

[64]  The note fails to reflect the additional testimony by plaintiff that Officer Cofield not only grabbed him but "threw [plaintiff] against the wall, bent [him] over, kneed [him] in the

December 14, 2004, to June 24, 2005, plaintiff underwent chiropractic treatment and electrical stimulation with hot and cold packs at the Advanced Spine Center. He visited the center on ten occasions between December 14 and 30, 2004, and 47 times between December 14, 2004 and June 24, 2005. The discharge evaluation reflects plaintiff's symptoms as related to the December 5, 2004 incident.

In short, the facts exhibit force that goes beyond a push in the back or, as Officer Cofield termed it, a "scrum" (Tr. III-105 & 116-117). See LaFrenier v. Kinirey, 478 F.Supp.2d at 138 ("'not every push or shove rises to the level of a constitutional violation'"). As previously noted, disturbing the peace in violation of section 53 is a misdemeanor. See Wagenmann v. Adams, 829 F.2d at 208. Assault and battery on a police officer is a felony and presents a more serious crime warranting a greater use of force. See LaFrenier v. Kinirey, 478 F.Supp.2d at 139; see also United States v. Dancy, 640 F.3d at 466-470.

Plaintiff was not attempting to evade arrest by flight. Although he was loud, it was only in the context of asking what he did wrong or to yell that he was not resisting arrest. The presence of three to four other officers as well as Officer Cofield reduces the need for the force employed. Throwing plaintiff against the wall and to the ground, dragging and

---

stomach and threw [him] on the floor." (Tr. II-24).

pulling him to the door and giving him a hard push in his back so
that he falls face first onto the cement floor was not necessary
to effectuate the arrest.  The exit of Monteiro-Rogers by the
time Officer Cofield dragged plaintiff across the floor and
pushed him in the back lessened the risk of an outbreak of
familial violence.  Although the events happened fast, a rational
jury could find that the force was unreasonable under the
totality of the circumstances from the vantage point of a
reasonable police officer.  See generally Parker v. Garish, 547
F.3d at 9-11.

In sum, the evidence does not point so strongly and
overwhelmingly in favor of Officer Cofield on the section 1983
verdict.  Officer Cofield is therefore not entitled to judgment
as a matter of law on the section 1983 claims.

C.  Judicial Estoppel

As a final basis for obtaining judgment as a matter of law,
Officer Cofield cites to the principle of judicial estoppel.  He
submits that plaintiff cannot meet his burden of proof by relying
on a set of facts that contradicts his sworn testimony or those
in the complaint.  The elements of judicial estoppel "cannot be
reduced to a scientifically precise formula."  Perry v. Blum, 629
F.3d 1, 8 (1st Cir. 2010) (citing New Hampshire v. Maine, 532
U.S. 742, 750 (2011)).  Ordinarily, the equitable doctrine of
judicial estoppel:

generally require[s] the presence of three things before
introducing the doctrine into a particular case.  First, a
party's earlier and later positions must be clearly
inconsistent.  Second, the party must have succeeded in
persuading a court to accept the earlier position.  Third,
the party seeking to assert the inconsistent position must
stand to derive an unfair advantage if the new position is
accepted by the court.

Perry v. Blum, 629 F.3d at 8-9 (citations omitted).

Applying judicial estoppel in the case at bar to overturn a
jury's verdict infringes the jury's ability to view the record as
a whole and to use evidence offered by Officer Cofield's
witnesses and the exhibits in arriving at a verdict.  Even
putting this aside, the doctrine still does not apply.  The
complaint, plaintiff's testimony at trial and his opposition to
the motion for judgment as a matter of law set out consistent,
not inconsistent, positions.  Moreover, plaintiff did not
persuade this court to accept his position that Officer Cofield
threw him against the wall, kneed him in the stomach and threw
him to the ground in a prior ruling.  The argument therefore
fails to provide a basis for judgment as a matter of law.

D.  Motion for New Trial on Section 1983 and Common Law Claims

Officer Cofield seeks a new trial in the event he is not
afforded judgment as a matter of law.  "A new trial is warranted
'only if the verdict, though rationally based on the evidence,
was so clearly against the weight of the evidence as to amount to
a manifest miscarriage of justice.'"  Astro-Med, Inc. v. Nihon
Kohden America, Inc., 591 F.3d 1, 13 (1st Cir. 2009); accord

65

Goulet v. New Penn Motor Express, Inc., 512 F.3d 34, 44 (1st Cir. 2008) (same); Crowe v. Marchand, 506 F.3d 13, 19 (1st Cir. 2007) (new trial required "'only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice'"); Colon-Millin v. Sears Roebuck De Puerto Rico, Inc., 455 F.3d 30, 35 (1st Cir. 2006) (new trial under Rule 59(a) "ordered when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice"); TransAmerica Premier Insurance Company v. Ober, 107 F.3d 925, 929 (1st Cir. 1997) (new trial requires finding that "the verdict is so seriously mistaken, so clearly against the law or evidence, as to constitute a miscarriage of justice").

"This strict standard of review is especially appropriate if the motion for new trial is based on a claim that the verdict is against the weight of the evidence." TransAmerica Premier Insurance Company v. Ober, 107 F.3d at 929 (internal quotation marks omitted). Although the court can weigh the evidence and assess the credibility of various witnesses, Jennings v. Jones, 587 F.3d at 436 ("district court is free to independently weigh the evidence"); Insurance Company of North America v. Musa, 785 F.2d 370, 375 (1st Cir. 1986) ("[i]n considering a new trial motion, the court may weigh the evidence and assess the credibility of witnesses"), a district court "cannot displace a

jury's verdict merely because he disagrees with it or because a contrary verdict may have been equally supportable." Jennings v. Jones, 587 F.3d at 436 (internal ellipses and quotation marks omitted).  Evidence and reasonable inferences therefrom are not taken in favor of the verdict winner.  See id. at 438 ("it has long been our circuit law that when reviewing a motion for a new trial under Rule 59, we do not take the evidence in the light most favorable to the verdict winner").

Officer Cofield seeks a new trial on the section 1983 claim primarily for the reasons set out with respect to the motion for judgment as a matter of law.  (Docket Entry # 65, § III(A)(1)).  He argues that a new trial is required because plaintiff's version of facts is neither credible nor believable.

Weighing the evidence and the credibility of the witnesses, the outcome remains the same.  Sufficient facts and credible evidence support the section 1983 false arrest claim.  Plaintiff, Officer Cofield and Mercado testified that Officer Cofield was right in plaintiff's face.  Plaintiff was compliant and not disturbing the peace.  Officer Cofield, however, was screaming while plaintiff was against the wall and with his hands up, according to  plaintiff, and, to a lesser degree, Mercado due to her vantage point, her attention focused on the children and her more limited time witnessing the events.  It is also believable that plaintiff did not push Officer Cofield and, until

being told he was under arrest, did not get loud.  Officer
Cofield, however, proceeded to effect an arrest when he turned
back to plaintiff even though he lacked probable cause.

Having carefully and seriously considered the entire record,
sufficient facts and credible evidence also support the section
1983 excessive force claim.  According to Officer Cofield's own
testimony, he then grabbed plaintiff with both hands and tried to
pull him towards the door.  Plaintiff credibly testified that
Officer Cofield threw him against the wall, kneed him in the
stomach and threw him on the floor.[65]  Notwithstanding the
presence of other officers, Officer Cofield dragged and pulled
plaintiff across the floor.  He also gave plaintiff a hard push
causing him to fall face first onto the cement floor.  These and
other facts demonstrate that the section 1983 excessive force
verdict was not against the weight of the credible evidence.  On
balance, the jury's finding on either the absence of probable
cause to arrest and/or Officer Cofield's use of excessive and
unreasonable force is not against the weight of the credible
evidence or a miscarriage of justice.

The credible evidence likewise supports the verdict on the
common law false arrest claim.  The evidence amply supports the
fact that Officer Cofield did not have reasonable grounds for an

---

[65]  As previously discussed, Officer Cofield waived the
inconsistency challenge.

arrest of plaintiff or, stated otherwise, he did not believe upon reasonable cause that plaintiff had committed assault and battery on a police officer.[66]  Plaintiff had not touched, pushed or put a hand on Officer Cofield.  Plaintiff credibly testified that he did not get loud until being told he was under arrest.  Given the time and place in the lobby of the police station, the credible evidence supports a finding that plaintiff, who was backing up with raised hands and agreeing to speak with Officer Cofield, was not being unreasonably, disorderly, unruly or disruptive.

As to the common law assault claim, Officer Cofield, who was larger and heavier than plaintiff, rushed toward plaintiff and, yelling and screaming, got right in plaintiff's face.  Plaintiff understandably got scared as would a reasonable person in his shoes.  This verdict is not against the weight of the credible evidence.

In light of the foregoing and other credible evidence in the record, the verdict on the false arrest and assault claims are

---

[66] See generally Julian v. Randazzo, 403 N.E.2d at 934 ("burden was on the defendants to prove justification" and "[t]hey did not need to show that a felony had actually been committed; it was enough if they believed upon reasonable cause that the person being arrested had committed a felony"); Jonielunas v. City of Worcester Police Department, 338 F.Supp.2d 173, 177 (D.Mass. 2004) (for arrest to be lawful "police officer must have reasonable grounds for making the arrest" and the "requirement of reasonable grounds has been held to be substantially overlapping with the constitutional requirement of probable cause") (citations and internal quotation marks omitted).

not against the weight of the credible evidence nor tantamount to a miscarriage of justice.  A new trial is not warranted.

II.  <u>MOTION FOR REMITTITUR</u>

Officer Cofield next moves for a remittitur of the $101,188.30 award.  (Docket Entry # 66).  He points out, accurately, that the legal bills to defend against the charges for violating section 13D and section 53 totaled $20,103.30. (Ex. 8).  The bills, which constituted the only evidence of the amount of legal bills plaintiff incurred, began with a November 22, 2005 telephone conference almost one year after the incident. (Ex. 8).  Because the false arrest claim restricted the recovery of legal expenses from the time of the initial detention to the issuance of legal process, Officer Cofield argues that plaintiff could recover for such bills only if he was successful on the abuse of process claim.  (Docket Entry # 67).

The chiropractic bills from the Advanced Spine Center totaled $6,085.00.  (Ex. 5).  Together with the legal bills ($20,103.30), Officer Cofield emphasizes that the amount totals the exact amount of the jury's award for past compensatory damages ($26,188.30) which is the same amount the jury attributed to damages solely for the section 1983 claim above and beyond damages included for any state law claim ($26,188.30).[67]

---

[67] As discussed below, the jury did not determine what, if any, portion of the future compensatory damages awarded in answer to question eight ($75,000.00) was attributed solely to the

70

Officer Cofield also argues that the jury's note evidences a confusion about its ability to award legal fees for this case as part of future damages.  Because the jury awarded past medical damages for the chiropractic bills ($6,085.00) and legal bills for defending the section 13D and 53 prosecution ($20,103.30), the jury did not award past emotional pain and suffering damages, according to Officer Cofield.  Extending this reasoning, Officer Cofield submits that the jury's award of future compensatory damages defies logic because the jury could not award legal fees for this case and it could not award future emotional damages when it did not award past emotional damages.

The verdict form did not itemize the past or future compensatory damages awards into specific categories of damages or claims.[68]  This court instructed the jury, without objection, that it could award damages for past and future physical and mental pain and suffering and past and future medical expenses.  This court also instructed the jury that it could award economic harms including defense costs under the section 1983 claim.[69]

---

section 1983 claim.

[68]   Neither party lodged an objection to the verdict form.

[69]   Again, Officer Cofield did not object to this instruction in a timely manner.  (Tr. IV-103).  Nor did he object to the admission of the legal bills into evidence.

(Docket Entry # 50, pp. 34-37).[70]  The exhibit of the legal bills

for defending the section 13D and 53 prosecution (Ex. 8) was the

only evidence of defense costs in the record.

Before proceeding to the discussion, it is worth noting that

Officer Cofield's assertion that plaintiff's counsel conceded

that plaintiff was not seeking emotional damages as a result of

the arrest is not correct.  (Docket Entry # 67).  Officer Cofield

did not object to the inclusion of emotional damages in the jury

instructions including with respect to the common law and section

1983 false arrest claims.  In addition, the portion of the

transcript Officer Cofield cites (Tr. I-9) does not support the

assertion.  Plaintiff's counsel was addressing the merits of a

motion in limine to allow the introduction of plaintiff's prior

and subsequent arrests.[71]  In *that* context, plaintiff's counsel

stated that "this is not a case in which the allegations are that

[plaintiff] suffered emotional distress as a result of the

arrest."  (Tr. I-9).  The statement was not a representation or a

stipulation that plaintiff was not seeking damages for the past

and future mental and emotional pain and suffering he experienced

---

[70]  As previously noted, docket entry number 50 contains the citations to legal authority for the instructions as read to the jury.  Footnote 74 sets out the relevant portion of the draft instructions vis-à-vis an award of defense costs under section 1983.

[71]  Plaintiff had been arrested a number of times and testified to being arrested five or eight times before the December 5, 2004 incident.  (Tr. II-72-73).

as a result of the false arrest made in front of his children.

STANDARD OF REVIEW

The standard applicable to a motion for a remittitur is firmly entrenched.  A court is "obligated . . . to grant a remittitur or a new trial on damages only when the award 'exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it.'"  Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Company, Inc., 40 F.3d 492, 502 (1st Cir. 1994); accord Anthony v. G.M.D. Airline Services, Inc., 17 F.3d 490, 493 (1st Cir. 1994) (setting forth same standard). A jury's award of damages "must endure unless it is '"grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand."'"  Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d at 13; see Franceschi v. Hospital General San Carlos, Inc., 420 F.3d 1, 5 (1st Cir. 2005) (new trial or remittitur allowed only if "award 'exceeds any rational appraisal or estimate of the damages that could be based on the evidence before the jury' and is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand'").  As explained by the court in Mejias-Quiros v. Maxxam Property Corporation, 108 F.3d 425 (1st Cir.

73

1997), the "general language ('rational basis') is given content by cases declaring that the verdict should stand unless it is 'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a denial of justice to permit it to stand.'" Id. at 428.

Officer Cofield, as the party challenging the award, "'bears a heavy burden of showing that an award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 554 F.3d 164, 174 (1ˢᵗ Cir. 2009); accord Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1ˢᵗ Cir. 1999); Velazquez v. Figuero-Gomez, 996 F.2d 425, 428 (1ˢᵗ Cir. 1993) (noting that standard "places an enormous burden on the party challenging the award").

Finally, an award involving an assessment of intangible, non-economic losses, is "a matter 'peculiarly within the jury's ken.'" Smith v. KMart Corporation, 177 F.3d 19, 30 (1ˢᵗ Cir. 1999); accord Velazquez v. Figuero-Gomez, 996 F.2d at 428 (same). Thus, the "'disinclination to second-guess a jury's evaluation of the proper amount of damages is magnified where the damages entail a monetary valuation of intangible losses.'" Blinzier v.

74

Marriott International, Inc., 81 F.3d 1148, 1161 (1st Cir. 1996)
(further noting disinclination to second guess trial judge who,
having seen and heard witnesses "'first hand, accepts the jury's
appraisal'"); see generally Air Safety, Inc. v. Roman Catholic
Archbishop of Boston, 94 F.3d 1, 5 n.9 (1st Cir. 1996) (according
broader discretion to trial judge's affirmation of damages award
involving intangible injuries while noting trial judge's greater
familiarity with witnesses' demeanor at trial).  Damages for pain
and suffering are not readily "'susceptible to proof through a
dollar amount.'"  Mejias-Quiros v. Maxxam Property Corporation,
108 F.3d at 428.

A review of a jury award of economic damages still affords
"great deference [to] the jury's assessment."  Shane v. Shane,
891 F.2d 976, 983 (1st Cir. 1989).  The review, however, "is much
more closely focused on whether there is adequate evidentiary
support for the amount awarded."  Air Safety, Inc. v. Roman
Catholic Archbishop of Boston, 94 F.3d at 5 n.9.

The basis of Officer Cofield's motion for a remittitur is
that the damage awards were excessive far exceeding a rational
appraisal of permissible damages.  According to Officer Cofield,
the damages were not based on or supported by the evidence.

DISCUSSION

75

Officer Cofield segments his arguments into a discussion of the jury's assumed award of past legal fees for the sections 13D and 53 prosecution ($20,103.30) (Docket Entry # 67, § III(b)); the jury's assumed award of $6,085.00 for past medical expenses (Docket Entry # 67, § III(c)); and the jury's award of $75,000.00 for future damages (Docket Entry # 67, § III(c)-(d)).  Addressing the first category, Officer Cofield submits that the $20,103.30 award is subject to a remittitur to zero because damages for a false arrest are limited to the time period from the initial detention to the issuance of legal process.[72]  He argues that the jury could only award the legal fees, which began to accrue almost one year after the December 2004 incident, on the common law abuse of process claim.

With respect to the common law false arrest claim, this court instructed the jury as follows:

> Damages for false arrest, however, are restricted to the time period between the initial detention and the issuance of legal process.[73]  Damages suffered thereafter for

---

[72]  The argument assumes that the $26,188.30 award for all past compensatory damages includes an award of the damages component of past defense costs and that the jury awarded all of those costs, to wit, $20,103.30 (Ex. 8).

[73]  At this juncture, the draft instructions included a footnote setting out the relevant law which reads as follows:

Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995) ("[d]amages for false arrest are restricted to the time period between the initial detention and the issuance of legal process"); accord Mitchell v. City of Boston, 130 F.Supp.2d 201, 214 (D.Mass. 2001); see also Singer v. Fulton

continued incarceration are not recoverable under a false arrest claim.

(Docket Entry # 50, p. 48; Tr. IV-97).  With respect to the

common law abuse of process claim, the instructions informed the

jury that plaintiff:

> may recover such damages as are the natural and probable consequences of the abuse of process.  Such damages may include the actual costs of defending against the improper action, which may include counsel fees, . . ..''

(Docket Entry # 50, p. 63; Tr. IV-101-102).

Finally, with respect to section 1983, this court instructed

the jury, without objection, that it "may award damages for

economic harms consisting of defense costs such as attorney's

fees that you find are a natural and probable consequence of the

defendant's misconduct.''[74]  (Docket Entry #

_____

County Sheriff, 63 F.3d 110, 117 (2nd Cir. 1995) ("'If there
is a false arrest claim, damages for that claim cover the
time of detention up until issuance of process or
arraignment, but not more.  From that point on, any damages
recoverable must be based on a malicious prosecution
claim'") (quoting treatise); Calero-Colon v. Betancourt-
Lebron, 68 F.3d at 4 n.8 (describing Singer decision as
"cogent discussion of the" distinctions between claims of
false arrest and malicious prosecution).

(Docket Entry # 50, n.54).

[74]  At this point, the draft instructions included the
following footnote which reads in part as follows:

"The Supreme Court and the First Circuit are clear that
federal common law controls damages premised on § 1983
liability."  Tardiff v. Knox County, 598 F.Supp.2d 115, 117
(D.Me. 2009) (collecting cases).  Compensatory damages
recoverable under section 1983 include "out-of-pocket losses
and other economic harms, as well as injuries to reputation,

personal humiliation, and mental anguish and suffering."
<u>Davet v. Maccarone</u>, 973 F.2d 22, 29 (1st Cir. 1992)
(arrestee's section 1983 action against police officers);
accord <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299,
307 (1986) (section 1983 damages "may include . . .
out-of-pocket loss and other monetary harms").

 As further elucidated by the court in <u>Barlow</u>, a case
involving a section 1983 claim and state law claims of
assault and battery, false arrest and negligent supervision
against police officers, such economic damages may include
defense costs such as attorney's fees:

> A plaintiff who proves that police arrested him without
> probable cause is entitled to compensation for the
> economic and non-economic damages he incurs as a
> proximate result of these violations.  <u>Borunda v.
> Richmond</u>, 885 F.2d 1384, 1389 (9th Cir. 1988).
> Reasonable attorney's fees incurred by the plaintiff
> can constitute part of the foreseeable economic
> damages, unless the prosecutor's decision to file
> charges is such an independent judgment that it must be
> considered the proximate cause of the subsequent
> criminal proceedings.

<u>Barlow v. Ground</u>, 943 F.2d 1132, 1136 (9th Cir. 1991).

 The Seventh Circuit in <u>Kerr</u> similarly allowed recovery
of legal fees expended by parents of a minor as part of
compensatory damages in a section 1983 civil rights action:

> The defendants also contend that attorneys' fees
> expended in a criminal action are not recoverable in a
> civil rights action.  We disagree.  In <u>Basista v. Weir</u>,
> 340 F.2d 74 (3rd Cir. 1965), the court held that
> federal common law controls the question of damages in
> civil rights actions with the purpose being to
> vindicate the civil rights of the individual.  340 F.2d
> at 85-86.  A plaintiff in a civil rights action should
> be allowed to recover the attorneys' fees in a state
> criminal action where the expenditure is a foreseeable
> result of the acts of the defendant.

<u>Kerr v. City of Chicago</u>, 424 F.2d 1134, 1141 (7th Cir.
1970); see <u>Ankele v. Hambrick</u>, 2003 WL 21396862, *1 (E.D.Pa.
May 12, 2003) (citing <u>Barlow</u> and denying motion in limine

50, pp. 35-37; Tr. IV-91).  The damages instructions for section
1983 also emphasized the need to establish causation by informing
the jury that:

> In the event you find the defendant liable to the plaintiff
> under section 1983, you may award the plaintiff such sum as
> you believe will fairly and reasonably compensate the
> plaintiff for any damages that you determine are caused by
> the defendant's misconduct.  In order to establish the
> necessary causation of damages in a section 1983 lawsuit,

---

> "insofar as it seeks to exclude Plaintiff's legal fees as an
> element of his alleged damages claim"); Brooks v. Moss, 242
> F. Supp. 531 (W.D.S.C. 1965); McArthur v. Pennington, 253
> F.Supp. 420, 430 (D.C.Tenn. 1963) (awarding $5,100
> compensatory damages against police officers in section 1983
> unlawful arrest case and including attorneys' fees as part
> of the compensatory damages award); see also Albright v.
> Oliver, 510 U.S. 266, 289-90 (1994) (Souter, J., concurring)
> (providing case law examples of injuries that have not "been
> treated by the Courts of Appeals as beyond the ambit of
> compensability under the general rule of 42 U.S.C. § 1983
> liability for a seizure unlawful under Fourth Amendment
> standards" including "financial expense of [a] legal
> defense");

> Finally, as noted by the Second Circuit in Guido:

> . . . under some circumstances fair attorneys' fees and
> expenses of litigation in collateral proceedings may
> constitute proper elements of damage in the action in
> chief.  See Safeway Rental & Sales Co. v. Albina Engine
> & Machine Works, 343 F.2d 129, 133 (10th Cir. 1965);
> Seaboard Surety Co. v. Permacrete Construction Corp.,
> 221 F.2d 366, 371-372 (3rd Cir. 1955); McArthur v.
> Pennington, 253 F.Supp. 420, 429, 430-431 (E.D.Tenn.
> 1963).  What is required is proof that the plaintiff
> became involved in collateral litigation with others as
> a natural and probable consequence of the wrong
> committed by the defendant against the plaintiff.

> Guido v. City of Schenectady, 404 F.2d 728, 741 (2nd Cir.
> 1968).

(Docket Entry # 50, n.36).

the plaintiff must show that the conduct on the part of the defendant was both a cause in fact and a proximate cause of the injuries to the plaintiff and consequent damages sustained by him.[75]   The defendant is responsible for the natural consequences of his actions and is therefore liable for damages that are the natural consequences of his actions.[76]

---

[75]   Again, the draft instructions at this point included a footnote which reads in part as follows:

In addition, as explained by the First Circuit in Olsen:

"The issue of causation of damages in a section 1983 suit is based on basic notions of tort causation." Rodríguez- Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997) (citing Maldonado Santiago v. Velázquez García, 821 F.2d 822, 831 (1st Cir. 1987)); see also Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 306-08, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); Carey v. Piphus, 435 U.S. 247, 258, 263, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); Buenrostro v. Collazo, 973 F.2d 39, 45 (1st Cir. 1992).   Under traditional tort principles, "[c]ausation is binary, comprising causation in fact and proximate (or 'legal') causation." Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 836 (1st Cir. 1990).   To establish causation, it must be shown both that the plaintiff's harm "would not have occurred 'but for' the [defendants'] breach [of a legal duty]" and that "the breach proximately caused the harm, that is, [that] the defendant should bear legal responsibility for the injury."

Olsen v. Correiro, 189 F.3d 52, 66 (1st Cir. 1999); see Hector v. Watt, 235 F.3d 154, 162 (3rd Cir. 2000) ("[a]ctions brought under § 1983 are reviewed like common law tort claims and require a proximate cause analysis").

(Docket Entry # 50, n.30).

[76]   Likewise, at this point the draft instructions included this footnote:

The First Circuit in Burke approved an instruction "that instructed the jury that 'the plaintiff must establish the defendant's acts were the proximate cause of injuries to him and consequent damages sustained by him.'" Burke v.

(Docket Entry # 50, pp. 31-33; Tr. IV-90).

As previously noted, Officer Cofield argues that the legal fees for the section 1983 false arrest claim are limited to the time period between the initial detention and the issuance of legal process and that the jury could only award legal fees beyond that time period under the abuse of process claim. Officer Cofield therefore seeks a remittitur to zero of the

---

McDonald, 572 F.3d 51, 55 (1st Cir. 2009).  The court found no error explaining as follows:

> We find no cognizable error in the district court's jury instructions, which framed the question of damages as a matter of proximate cause.  This approach to the issue is consistent with *Supreme Court precedent emphasizing that liability under § 1983 flows against the defendant for all damages that are the "natural consequences of his actions."*  Malley v. Briggs, 475 U.S. 335, 344 n.7, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (quoting Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)) (internal quotation marks omitted).
>
> Indeed, in Wagenmann we upheld a jury verdict against a police officer who manipulated the independent and informed decisions of judicial officers after the jury instructions had put the question of damages in terms of causation.  829 F.2d at 211-13.  In so doing, we noted that "[t]he law looks to causation in fact" when assessing damages, id. at 211, and that the evidence supported "the finding that [the defendant officer] proximately caused bail to be set," id. at 212 (emphasis added).  We also emphasized that § 1983 "should be read against the background of tort liability that *makes a man responsible for the natural consequences of his actions*," id. (citing Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987)).

Burke v. McDonald, 572 F.3d at 60 (emphasis added).

(Docket Entry # 50, n.31).

assumed $20,103.30 award because the jury found in his favor on the abuse of process claim.

In presenting the argument, Officer Cofield makes the assumption that the $26,188.30 award includes the legal fees of $20,103.30.  Assuming for purposes of argument only that the assumption is correct,[77] a remittitur is still inappropriate because, as explained below, the section 1983 false arrest claim encompasses such damages.

First, without a timely objection from Officer Cofield, the jury instructions did not limit the legal damages for the section 1983 claim to the time period between the initial detention and the issuance of legal process even though the only evidence in the record demonstrated that the legal fees did not accrue until November 2005.  Nor did Officer Cofield oppose section 1983 defense costs in the Rule 50(a) motion, which this court denied before submitting the case to the jury, or in the Rule 50(b) motion for judgment as a matter of law.  Second, as the cited cases demonstrate,[78] section 1983 damages do not include the temporal limitation of a common law false arrest claim but

---

[77]   As explained below, in evaluating a motion for remittitur of a general damages award that contains several components the proper vantage point is to evaluate the compensatory damages as a whole.  See Coy v. Simpson Marine Safety Equipment, Inc., 787 F.2d 19, 27 (1st Cir. 1986); Clark v. Taylor, 710 F.2d 4, 13 (1st Cir. 1983).

[78]   See footnotes 74 to 76.

instead frame the limitation as to damages in terms of causation and the natural and probable consequences of the misconduct.

Third, section "'1983 creates a species of tort liability'" and "'the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights.'" Heck v. Humphrey, 512 U.S. 477, 483 (1994). Such rules, which "'defin[e] the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.'" Id. (quoting Carey v. Piphus, 435 U.S. 247, 257-258 (1978)). Even though the analogous tort of a common law false arrest includes the temporal limitation, the analogous tort of malicious prosecution is not subject to the temporal limitation. See generally id. at 484. In addition, unlike an analogous common law false arrest claim, the purpose of section 1983 is to afford vindication to persons deprived of their constitutional rights. Recovery of foreseeable legal fees for the state criminal action serves that purpose. See Kerr v. City of Chicago, 424 F.2d at 1141.

Finally, it is Officer Cofield's burden to show that the $20,103.30 award is subject to a remittitur. He fails to meet that burden.

Turning to the alleged jury award of $6,085.00 for past

83

medical expenses,[79] Officer Cofield seeks a reduction of the
award to zero because the jury purportedly did not find in favor
of plaintiff on the section 1983 excessive force claim and the
battery claim.  Officer Cofield submits that, "a finding of no
battery is the equivalent of a finding of no excessive force."
(Docket Entry # 67, § III(c)).  Consequently, "[w]ithout a
finding of battery or excessive force," plaintiff "did not suffer
any physical injury as a result of the arrest" and is therefore
not entitled to recover for the chiropractor bills of $6,085.00.
(Docket Entry # 67, § III(c)).

First, as previously explained, the argument that the no
battery finding requires a no excessive force finding on the
section 1983 excessive force claim is waived.  Accordingly, it
cannot provide a basis for a remittitur.  See Nebraska Plastics,
Inc. v. Holland Colors Americas, Inc., 408 F.3d at 421; Austin v.
Paramount Parks, Inc., 195 F.3d at 726.

Second and in the alternative, the argument assumes that the
past compensatory damages award of $26,188.30 consisted of an
award of $6,085.00 for medical expenses for the injuries to

---

[79] Subject to the section 1983 damages instruction on
causation, the instructions charged the jury that it "may also
award damages for the reasonable value of medical expenses that
you find have been reasonably required and actually given to the
plaintiff in the past."  (Docket Entry # 50, p. 35; Tr. IV-91).

plaintiff's back[80] and an award of $20,103.30 for legal fees. Plaintiff argues that such an assumption amounts to speculation as to what the jury did. (Docket Entry # 71). According to plaintiff, because the past and future compensatory damages awards were not itemized, Officer Cofield is not in a position to challenge the legality of the award and all that is known is that $26,188.30 of the $101,188.30 total consists of damages unique to the section 1983 claim in light of the jury's answer to question 12 in the verdict form. (Docket Entry # 71, p. 4).

Where, as here, the jury renders a general award on compensatory damages, the proper framework "'is not to parse the award into its various components, but to determine whether the award as a whole is within the universe of possible awards which are supported by the evidence.'" Coy v. Simpson Marine Safety Equipment, Inc., 787 F.2d at 27[81] (quoting Clark v. Taylor, 710 F.2d at 13). Thus, as was the case in Clark, "[t]he principle obstacle to [Officer Cofield's] argument is that the jury did not make a specific award for [past] medical expenses." Clark v. Taylor, 710 F.2d at 13 (upholding general verdict on compensatory

---

[80] Similar to the legal bills (Ex. 8), the only evidence of medical expenses to treat plaintiff's back consisted of the records from the Advanced Spine Center (Ex. 5) which totaled $6,085.00. Plaintiff incurred these expenses well before the April 2011 trial and they therefore constitute past medical expenses.

[81] Justice Breyer, then a First Circuit judge, was a member of the panel.

damages against challenge that evidence lacked support for the plaintiff's fear of developing cancer and that award of future medical expenses was speculative).[82]  Officer Cofield also faces a difficult task in light of the aforementioned disinclination to disturb a general damages award that may include pain and suffering.  See also Clark v. Taylor, 710 F.2d at 13 ("[p]articularly in a case such as this, where the general damage award includes compensation for pain and suffering, we are reluctant to disturb a jury award unless it is 'grossly excessive' or 'shocking to the conscience'").

The instructions on past compensatory damages included a number of components.  Specifically, it allowed for an award of past medical expenses, past physical and mental pain and suffering and, with respect to the section 1983 claim, past defense costs.  Accordingly, like the awards in Coy and Clark, it

---

[82] The jury in Clark awarded one figure for the compensatory damages and one figure for the punitive damages.  Clark v. Taylor, 710 F.2d at 7-8.  The court referred to the compensatory damages award as a general verdict:

On agreement of the parties, the jury returned a general verdict on compensatory damages, including both physical and mental distress and reasonably foreseeable medical expenses. Our proper review of such a verdict is not to parse the award into its various components, but to determine whether the award as a whole is within the universe of possible awards which are supported by the evidence

Id. at 13.

included a number of different categories of damages.[83]  Similar
to the appellants' argument in Coy,[84] Officer Cofield submits
that the general award of $26,188.30 is unquestionably identified
as constituting legal fees ($20,103.30) (Ex. 8) and the
chiropractic bills ($6,085.00) (Ex. 5) and that the jury made no
award for pain and suffering.  Although the court in Coy
discussed and discounted the argument that the evidence
supporting an expert's estimate of the $62,872.00 net loss of
business based on a yearly revenue of $2,000 was not supported by
the evidence, the court also noted that, "this was a case where
the jury could have found a considerable amount of pain and
suffering."  Coy v. Simpson Marine Safety Equipment, Inc., 787
F.2d at 27-28 (finding no abuse of discretion in denial of motion
for remittitur or to set aside damages verdict).

Here too, the jury could have found that plaintiff suffered
a considerable amount of emotional pain and suffering resulting

---

[83]  It is true that the awards in Clark and Coy did not
separate past and future compensatory damages award.  The
determinative and identical characteristic in all three awards,
however, remains that they included a number of different
components which the jury did not segregate into separate
amounts.

[84]  The appellant in Coy argued "that the components of the
general award of $488,321.00 can be easily and unquestionably
identified, that the jury made no award for conscious pain and
suffering" and that it included an expert's estimated $62,872.00
for loss of earnings to a business that the uncontradicted
evidence did not support.  Coy v. Simpson Marine Safety
Equipment, Inc., 787 F.2d at 27.

from the false arrest in front of his children as well as from the assault.  Plaintiff repeatedly testified to experiencing humiliation and mental anguish at what took place in front of his children.  He testified about experiencing a devastating feeling because his kids witnessed what happened to him.  His facial expressions, tone of voice and manner were convincing when he spoke about feeling devastated and being a mental wreck as a result of the incident witnessed by his children.  When asked to describe his feelings at the time, he testified to experiencing pain, fear, anxiety, nervousness and anger.  He was also upset, shocked and surprised at the arrest because he never assaulted Officer Cofield.  He has a continuing fear of the police.  See Hall v. Ochs, 817 F.2d 920, 928 (1st Cir. 1987) (upholding $100,000 emotional distress awards for arrest with only minor injuries while noting testimony about continuing fear of police).

Accordingly, the $26,188.30 award as a whole falls into the universe of possible awards supported by the evidence.  See Coy v. Simpson Marine Safety Equipment, Inc., 787 F.2d at 27 (using this standard in face of general verdict on compensatory damages).  It is neither grossly excessive, shocking to the conscience of this court nor inordinate.  Officer Cofield's first and second arguments do not support the remittitur he requests.

It is also worth noting that case law outside the First Circuit does not favor Officer Cofield's position.  Similar to

88

the position taken by the First Circuit in <u>Coy</u>, 787 F.2d at 27, and <u>Clark</u>, 710 F.2d at 13, courts elsewhere question the merits of extracting itemized figures for categories of damages from a general damages award.  See <u>Durant v. Surety Homes Corp.</u>, 582 F.2d 1081, 1084-1085 (6th Cir. 1978) (because verdict form only distinguished between compensatory and punitive damages "it is impossible to know precisely how the jury divided the damages among the categories of what it had been instructed were proper compensatory damages");[85] <u>accord</u> <u>Osburn v. Anchor Laboratories, Inc.</u>, 825 F.2d 908, 919 (5th Cir. 1987) (where "court used a general verdict interrogatory and instructed on several elements of damages, it is sometimes impossible to determine the reason the verdict was excessive"); <u>De Centeno v. Gulf Fleet Crews, Inc.</u>, 798 F.2d 138, 142 (5th Cir. 1986) ("lump sum verdict . . . gives us no insight into the amount of damages the jury allowed on each item"); <u>Abernathy v. Superior Hardwoods, Inc.</u>, 704 F.2d 963, 972 (6th Cir. 1983) (reconstructing "jury's thinking from a general verdict is often difficult and fruitless"); <u>Arnott v. American Oil Co.</u>, 609 F.2d 873, 889 (3rd Cir. 1979) ("[i]t would be purely speculative to assume that the entire general verdict

---

[85]   The <u>Durant</u> court further noted that when "there are multiple elements of compensatory damages put to the jury, and its verdict thereon is in general form, it is not proper for the court to attempt to segregate out elements which should not have gone to the jury by making its own assessment of the proven damages on the legitimate elements."  <u>Durant v. Surety Homes Corp.</u>, 582 F.2d at 1085-1086.

of $100,000 was awarded as damages resulting from violation of

the antitrust laws"); <u>Porterfield v. Burlington Northern Inc.</u>,

534 F.2d 142, 147 (9th Cir. 1976) ("[w]e cannot, by way of

speculation, pierce the general verdict to draw the conclusions

contended for by Porterfield").

Officer Cofield next attacks the award of $75,000.00 for

future compensatory damages.  He argues that the award rests on

the common law assault claim.  He posits that:

> The jury specifically attributed the $26,188.30 to the §
> 1983 claim and, because a jury cannot award duplicative
> damages for both the § 1983 unlawful seizure claim and the
> common law false arrest claim,[86] the remaining $75,000 could
> only be for future damages on the Plaintiff's state law
> assault claim.

(Docket Entry # 67, p. 3).

Plaintiff agrees only insofar as the answer to question 12

of $26,188.30 shows that this damages award is unique and solely

attributable to the section 1983 claim.  Plaintiff argues that

the answer does not preclude the jury from basing the $75,000.00

award of future damages as common to both the section 1983 claim

and a state law claim or as grounded solely on one or more state

common law claims.

---

[86] The instructions repeatedly advised the jury not to award
damages that duplicate damages for the same injury awarded on
another claim.  (Tr. IV-92, 97, 99 & 101).  Assuming that the
jury followed these instructions repeated four times, <u>see
Morales-Vallellanes v. Potter</u>, 605 F.3d 27, 35 (1st Cir. 2010),
neither the past compensatory damages award ($26,188.30) nor the
future compensatory damages award ($75,000.00) included duplicate
damages for the same injury awarded on another claim.

First, question 12 asked the jury to refer to the total compensatory damages "awarded" in answer to question seven, i.e., the past compensatory damages award of $26,188.30, and question nine, which concerned punitive damages. The parties overlook that question 12 did not encompass or refer the jury to the future compensatory damages awarded in question eight, i.e., the $75,000.00.[87] Question 12 asked the jury to designate what amount, if any, of the amount in questions seven and *nine* represented damages solely for the section 1983 claim. The jury answered with the figure of the entire amount, $26,188.30. In other words, given the failure to award punitive damages in question nine, the jury attributed $26,188.30 of the total past compensatory damages awarded in question seven ($26,188.30) entirely to the section 1983 claim. The jury did not make a determination relative to the future damages awarded in answer to question eight and/or whether the future damages award ($75,000.00) included compensation for the section 1983 claim. This fact is fatal to Officer Cofield's argument.

Even assuming, as urged by Officer Cofield, that the jury did not award past compensatory damages under the assault claim

---

[87] No party objected to the form of the verdict. Irrespective of question 12, the jury rendered a verdict that encompassed all of the theories of liability and all of the categories of damages. Thus, any confusion on the part of the jury caused by question 12's reference to an "amount" in question nine was harmless.

or past emotional damages for the section 1983 claim and the
common law false arrest claims (Docket Entry # 67, pp. 11-12),
Officer Cofield is also not correct that the $75,000.00 future
damages award is based on the assault claim simply because the
jury could not award duplicate damages on the section 1983 false
arrest and the common law false arrest claims.[88]  As plaintiff
correctly points out, the past and future damages questions did
not ask the jury to specify the claim.  More to the point,
question eight, which asked the jury for the amount of future
damages, was not claim specific and it was not encompassed in
question 12.  The prohibition against duplicative damages award
does not provide a basis to assume that the $75,000.00 award is
based on the assault claim.

---

[88]  The specific argument reads as follows:

The jury specifically attributed the $26,188.30 to the §
1983 claim and, because a jury cannot award duplicative
damages for both the § 1983 unlawful seizure claim and the
common law false arrest claim, the remaining $75,000 could
only be for future damages on the Plaintiff's state law
assault claim . . .

The jury's award of $75,000 in future damages for the state
law claim of assault is not based on any rational
calculation of actual damages.  The jury's past compensatory
damages award of [$]26,188.30 was solely for the § 1983
unlawful seizure.  (Paper No. 52).  Because the jury is
barred from duplicating awards for the same claims, i.e., §
1983 unlawful seizure and false arrest, the future damages
award was for the Plaintiff's state law assault claim only.
(Papers No. 50, 52).

(Docket Entry # 67, pp. 3 & 7-8).

Likewise, the jury award of $26,188.30 for past compensatory damages under section 1983, even assuming for purposes of argument only that it consisted of legal fees and chiropractic treatment under the section 1983 claim, does not prevent the jury from making an award of future pain and suffering damages on that same claim because of the prohibition against duplicative damage awards.  Officer Cofield therefore fails to meet his burden to show that the future damages award ($75,000.00) is excessive relative to the section 1983 claim.

In any event, there is ample evidence to support an award of future mental pain and suffering on the section 1983 false arrest claim, the section 1983 excessive force claim and/or the common law assault claim.  As set out in the instructions, the components of future compensatory damages for the section 1983 claim allowed the jury to award damages for any future "mental pain and suffering" including any resulting "mental pain, injury to reputation, personal humiliation, embarrassment, fear and emotional distress or anguish caused by [Officer Cofield's] misconduct which the plaintiff . . . is reasonably expected to experience in the future."  (Tr. IV-91).  The damages instructions on the assault claim allowed the jury to award the same components as the section 1983 claim except for the defense costs.  Both instructions cautioned the jury not to award duplicative damages and required the jury to find the necessary

causal connection.   (Tr. IV-90 & 100-101).[89]

Turning to the evidence, plaintiff experienced mental and
emotional pain and suffering as a result of Officer Cofield's
misconduct.   Plaintiff repeatedly testified to feeling humiliated
in front of his children.   With a convincing demeanor and tone of
voice, he testified to experiencing fear, anxiety, nervousness
and anger.   Shortly after the incident, he described himself
mentally as a wreck.   When he received the summons, he was
shocked and upset.   At the time of trial, he continued to have
feelings and emotional responses about the incident.[90]   (Tr. II-
35-36, 42, 46 & 48-49).   Although there was no expert testimony

---

[89]   The draft instructions contain the relevant legal
authority.   (Docket Entry # 50, pp. 31-32 & 58-59).

[90]   For example, plaintiff testified as follows:

Q.  Now, as you think about it today, Mr. Rogers, do you
still have feelings, emotional responses to what happened on
that day?

A.  Yes.

Q.  Can you describe to the jury please what those are?

A.  I'm somewhat anxious.   It bothers me that this happened
in front of my children.   I mean, when I see my children,
sometimes we deal with this.   I'm fearful somewhat of the
police now, and I never was afraid of the police before.   I
try to avoid any -- like if I see the police in Dudley where
my businesses were, because I go to Dudley all the time, you
know, if I see the police walking up the street, I get on
the opposite side of the street; I'm just still in
disbelief.   I can't believe that this happened.

(Tr. II-49).

about his mental anguish or testimony about seeking psychiatric treatment or taking medication, plaintiff's testimony provides sufficient evidence to support the future compensatory damages award of $75,000.00 for mental pain and suffering.  See generally Mendez-Matos v. Municipality of Guaynabo, 557 F.3d 36, 47 (1st Cir. 2009) (affirming compensatory awards of $35,000 and $50,000 and noting that "[a] plaintiff does not need to present expert testimony to recover damages for emotional distress caused by the violation of his civil rights").

In another argument, Officer Cofield submits that even if the $75,000.00 award for future compensatory damages represented damages for future emotional harm, the amount exceeds any rational appraisal of the evidence.  (Docket Entry # 67, § III(e)).  In presenting the argument, Officer Cofield again assumes that the future damages award was based only on the assault claim.  First, for previously stated reasons, the assumption is incorrect.  Second, the argument that plaintiff's emotional harm testimony concerned only the arrest and not the assault mischaracterizes the evidence.  Except for the surprise, shock and upset at receiving the summons for the criminal charges (Tr. II-46), plaintiff's testimony was not specific.  He testified generally to "this happening" or "this happened to me in front of my kids" or "my kids saw this happen to me" as well as "what happened that day."  (Tr. II-35-36, 42 & 48-49).  He did

not specify the "happening" as being only the arrest or limit the description of emotional injury in a manner to exclude the assault or use of force.

Officer Cofield additionally argues that the jury had no basis to award future emotional damages for the assault claim because it did not award any past damages, emotional or otherwise, on the assault claim.  (Docket Entry # 67, § III(d)). The fact that the jury did not award past damages does not preclude them from awarding future damages if the evidence provides sufficient support for such damages.  Here, the evidence in the form of plaintiff's testimony rendered in a sincere and convincing manner provides ample support for the relatively modest award of $75,000.00.

Officer Cofield also maintains that the jury's note demonstrates that the $75,000.00 constitutes an award of legal fees for this trial.  In response to the question, this court directed the jury back to the instructions on damages.  These instructions informed the jury not "to award speculative damages" or "compensation for any future loss which, although possible, is not reasonably certain to occur in the future."  (Tr. IV-91). This court also instructed the jury to award defense costs only on the section 1983 claim and then only if the jury found that the costs were "a natural and probable consequence of the defendant's misconduct."  (Tr. IV-91-92).  Finally, the

96

instructions stated that the jury:

> must consider only the evidence I have admitted in the case.
> The term "evidence" includes the sworn testimony of the
> witnesses, any stipulations and the exhibits admitted into
> the record.

(Tr. IV-74).  Exhibit eight for past defense costs for the

sections 13D and 53 prosecution was the only evidence of legal

bills in the record.

It is "'[a] basic premise of our jury system . . . that the

jury follows the court's instructions.'"  Morales-Vallellanes v.

Potter, 605 F.3d at 35.  Where, as here, the jury heard legally

adequate instructions, this court will not assume jury confusion

or verdict taint.[91]  See Mass. Eye & Ear Infirmary, 552 F.3d 47,

58 n.12 (1st Cir. 2009); Davis v. Rennie, 264 F.3d at 109.

Moreover, the assumption that the award constitutes legal

fees for this case is misplaced because such fees would not

constitute compensation for future damages.  Officer Cofield's

argument entirely overlooks that "future" damages of $75,000.00

would not include the legal fees plaintiff already incurred in

the past before the April 7, 2011 verdict for pursuing this

action.  The fees for this case by and large constitute past

damages.

Finally, the $75,000.00 figure is not excessive and does not

_____

[91]  Indeed, Officer Cofield's counsel did not initially see
the possible confusion.  (Tr. IV-107, l. 2-6; Tr. IV-108, l. 22-
25).

97

warrant a remittitur.  Similar cases approve significantly higher amounts.  See, e.g., Smith v. Norwest Fin. Acceptance, Inc., 129 F.3d 1408, 1417 (10th Cir. 1997) ($200,000 emotional distress damages not excessive where the plaintiff's symptoms included headaches, sleeplessness and frequent crying).  Plaintiff testified about being upset, shocked and surprised at receiving the criminal complaint charging him with violations of sections 13D and 53.  (Tr. II-46).  The fact that "[c]harges were brought against [him] for something [he] didn't do" still bothered him at the time of trial.  (Tr. II-49).  He has a fear of police and, prior to the incident, he was "never" afraid of the police.  (Tr. II-48).  The incident took place in front of his children which plaintiff repeatedly and convincingly testified caused him mental anguish.  (Tr. II-42) ("I just couldn't understand why this happened, you know, why—and especially my kids saw this happen to me, in front of my children.  You know it was devastating.  I was a mental wreck."); (Tr. II-35-36 & 49).

In short, this court concludes that the $75,000.00 award was not grossly excessive, inordinate and shocking to this court's conscience.  To the contrary, the evidence provides legally sufficient support for the award of $75,000.00 for the mental pain and suffering plaintiff is reasonably certain to experience in the future.  A remittitur of the figure is not appropriate.

III.  QUALIFIED IMMUNITY

In the post trial motions, neither party addresses the issue of qualified immunity.  Officer Cofield raised the affirmative defense in his answer.  He also raised it in a Rule 50(a) motion. (Docket Entry # 51).  This court submitted a preliminary factual question to the jury regarding qualified immunity.[92]  The jury answered the question in a manner favorable to plaintiff.

Qualified immunity protects police officers "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Mlodzinski v. Lewis, 2011 WL 2150741, *6 (1st Cir. June 2, 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  Determining entitlement to such immunity entails determining:  "(1) whether the facts alleged or shown by the Plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation."  Estrada v. Rhode Island, 594 F.3d 56, 62-63 (1st Cir. 2010) (internal quotation marks and brackets omitted); see

---

[92]    The jury answered affirmatively the question of whether "a reasonable policeman would have understood that the conduct of [Officer Cofield] violated plaintiff's right to be free from an unreasonable seizure of his person under the Fourth Amendment." (Docket Entry # 52, No. 11).  Although entitlement to qualified immunity is an issue of law "'for the court to decide,'" the jury may "'determine any preliminary factual questions' so that the court can determine the legal issue of the official's reasonableness.'"  Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 51 n.10 (1st Cir. 2010) (quoting Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 83-84 (1st Cir. 2006)).

also Maldonado v. Fontanes, 568 F.3d at 269 (discussing Pearson and adhering to "the Court's two-part test" thereby abandoning First Circuit's previously employed three step analysis).  The second prong entails considering "two subsidiary issues," to wit, "(a) the clarity of the law in general at the time of the alleged violation; and (b) the clarity of the law as applied to the case-in other words, whether a reasonable person in the defendant's shoes 'would have understood that his conduct violated the Plaintiff's constitutional rights.'"  Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010).  Overall, the doctrine aims "to avoid the chilling effect of second-guessing where the officers, acting in the heat of events, made a defensible (albeit imperfect) judgment."  Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010); accord Raiche v. Pietroski, 623 F.3d at 36 (same).

Where, as here, the qualified immunity analysis arises after a jury verdict, the first prong examining the existence of a constitutional violation involves considering "the sufficiency of the evidence supporting a finding of excessive force," Raiche v. Pietroski, 623 F.3d at 36; Jennings v. Jones, 499 F.3d at 11 n.12,[93] or, as to the section 1983 false arrest claim, the

---

[93]  As explained by the Jennings court:

Because we now address the question of qualified immunity after this jury verdict for the plaintiff, our task on the first prong of the qualified immunity analysis is to

sufficiency of the evidence that Officer Cofield had probable

cause to make the arrest.  Here, for reasons already discussed,

this court makes the same finding that there was sufficient

evidence that Officer Cofield violated plaintiff's Fourth

Amendment rights to be free from a warrantless arrest without

probable cause and to be free from an unreasonable seizure of his

person.

Turning to the second prong of the immunity analysis, the

first subsidiary issue examines "the clarity of the law in

general at the time of the alleged violation."  Raiche v.

Pietroski, 623 F.3d at 38.  Examining whether the law was clear

in general necessitates defining "'the right allegedly violated

at the appropriate level of specificity,'" which often devolves

into considering whether the violation was clearly established.

Id. (quoting Jennings v. Jones, 499 F.3d at 16-17).  The law is

clearly established "either if courts have previously ruled that

materially similar conduct was unconstitutional, or if 'a general

constitutional rule already identified in the decisional law

applies with obvious clarity to the specific conduct at issue.'"

Jennings v. Jones, 499 F.3d at 16 (quoting United States v.

_____

"inquire whether the evidence at trial, viewed in the light
most favorable to the verdict, is legally sufficient to
support the jury's verdict that the plaintiff was deprived
of a constitutional right."

Jennings v. Jones, 499 F.3d at 11 n.12.

Lanier, 520 U.S. 259, 271 (1997); omitting internal brackets).

Similarly, the violation itself is clearly established "'either

if courts have previously ruled that materially similar conduct

was unconstitutional,' or if the conduct was 'such an obvious

violation of the Fourth Amendment's general prohibition on

unreasonable force that a reasonable officer would not have

required prior case law on point to be on notice that his conduct

was unlawful.'" Raiche v. Pietroski, 623 F.3d at 38 (quoting

Jennings v. Jones, 499 F.3d at 16).

A.  False Arrest Claim

The right at issue in the false arrest section 1983 claim

emanates from the Fourth Amendment.  With respect to this claim,

it was clearly established in December 2005 that warrantless

arrests require probable cause.  See Wilson v. City of Boston,

421 F.3d 45, 54 (1st Cir. 2005) ("decades of case law have

established that a warrantless arrest . . . requires probable

cause").  It was also clearly established that "[p]robable cause

for an arrest exists when the arresting officer, acting upon

apparently trustworthy information, reasonably concludes that a

crime has been (or is about to be) committed and that the

putative arrestee likely is one of the perpetrators." Acosta v.

Ames Department Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004)

(citing Beck v. Ohio, 379 U.S. at 91).

The suspected crimes consisted of assault and battery on a

police officer and disturbing the peace[94] and conceivably

disorderly conduct.[95]   <u>See</u> <u>United States v. Bizier</u>, 111 F.3d 214,

219 (1st Cir. 1997) ("probable cause need only exist as to any

offense that could be charged under the circumstance").   Probable

cause in this instance therefore examines the reasonable

likelihood that plaintiff had or was about to commit one of these

three suspected crimes.   <u>See</u> <u>Cox v. Hainey</u>, 391 F.3d at 31 (test

for probable cause is objective and "the proof must be such as to

give rise to a reasonable likelihood that the putative arrestee

committed the suspected crime").

Here, Officer Cofield's conduct was such an obvious

---

[94]   Footnotes 25 and 26 set out the elements of these
offenses.

[95]   The court in <u>LaFrenier v. Kinirey</u>, 478 F.Supp.2d 126
(D.Mass. 2007), sets out the applicable boundaries of section 53
which prescribes disorderly conduct:

The Massachusetts Supreme Judicial Court has interpreted
[section 53] to incorporate the Model Penal Code's
definition of disorderly conduct.   <u>See</u> <u>Abraham v. Nagle</u>, 116
F.3d 11, 13 (1st Cir. 1997) (citing <u>Alegata v. Commonwealth</u>,
353 Mass. 287, 303, 231 N.E.2d 201 (1967)).   That definition
states:

A person is guilty of disorderly conduct if, with
purpose to cause public inconvenience, annoyance or
alarm, or recklessly creating a risk thereof, he . . .
engages in fighting or threatening, or in violent or
tumultuous behavior; or . . . creates a hazardous or
physically offensive condition by any act which serves
no legitimate purpose of the actor.

<u>LaFrenier v. Kinirey</u>, 478 F.Supp.2d at 137.

violation of the Fourth Amendment's prohibition on warrantless arrests without probable cause that more specific case law on the matter was not required to give fair warning.  See Raiche v. Pietroski, 623 F.3d at 39 (quoting Jennings v. Jones, 499 F.3d at 16-17) ("Pietroski's excessive conduct was 'such an obvious violation of the Fourth Amendment's general prohibition on unreasonable force that a reasonable officer would not have required prior case law on point to be on notice that his conduct was unlawful'").

Viewing the facts in the light most favorable to the verdict,[96] plaintiff had not touched Officer Cofield.  Plaintiff was neither loud nor combative at the time Officer Cofield testified to making the decision to arrest and then telling plaintiff he was under arrest.  Plaintiff was cooperative, backed against the wall with his hands raised and cooperating with Officer Cofield's request to speak with him.  Plaintiff was not endangering Officer Cofield or the safety of others.  Officer Cofield nonetheless turned back to plaintiff and proceeded to arrest him for assault and battery on a police officer and disturbing the peace.  As such, his conduct was such an obvious

---

[96]  The First Circuit in Jennings explains that, "where the jury has issued a general verdict, as it did here, we view the facts in the light most favorable to the verdict" which "view of the facts persists throughout the three prongs of the qualified immunity analysis."  Jennings v. Jones, 499 F.3d at 7 (internal quotation marks and citation omitted).

violation of the Fourth Amendment that he would not have required prior case law to be placed on notice that the conduct was unlawful.  See, e.g., Iacobucci v. Boulter, 193 F.3d 14, 24 (1st Cir. 1999).

As to the second subsidiary issue, a reasonable officer in Officer Cofield's "shoes 'would have understood that his conduct violated the Plaintiff's constitutional rights.'"  Raiche v. Pietroski, 623 F.3d at 36.  Agreeing with the jury's unchallenged finding in answer to question 11 and, in any event, independently reaching the same result irrespective of the jury's finding, Officer Cofield is not entitled to qualified immunity from damages on the section 1983 false arrest claim.

B.  Excessive Force

Turning to the second prong of the qualified immunity analysis relative to the section 1983 excessive force claim, this court prefers to give the parties an opportunity to brief the issue.  This court will therefore conduct a status conference to determine if the parties wish to be heard and, if so, how much time they require.

CONCLUSION

Officer Cofield's post trial motions (Docket Entry # 64 & 66) are **DENIED**.  This court will determine the second prong of the qualified immunity issue relative to the section 1983 excessive force claim as well as the motions for attorneys' fees

(Docket Entry ## 56 & 78) at a later time.  The parties shall

appear for a status conference on December 19, 2011 at 2:30 p.m.


                                 /s/ Marianne B. Bowler
                                **MARIANNE B. BOWLER**
                                United States Magistrate Judge