UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIONEL ROGERS,
          Plaintiff,

          v.                                    CIVIL ACTION NO.
                                                08-10684-MBB
GERALD L. COFIELD, JR.,
          Defendant.

### MEMORANDUM AND ORDER RE:
### QUALIFIED IMMUNITY

### December 12, 2012

**BOWLER, U.S.M.J.**

Pending before this court are issues of qualified immunity in this civil rights action brought by plaintiff Lionel Rogers ("plaintiff").  Defendant Gerald L. Cofield, Jr., an officer of the Boston Police Department ("Officer Cofield"), raised this affirmative defense in his answer.  He also raised it in a Rule 50(a), Fed. R. Civ. P., motion.  (Docket Entry # 51).

As explained in far greater detail in a prior Memorandum and Order (Docket Entry # 80), the verdict form set out a false arrest claim and an excessive force claim under 42 U.S.C. § 1983 ("section 1983") as well as common law claims for false arrest, assault, battery and abuse of process.  The verdict form did not distinguish between the false arrest and excessive force section 1983 claims in question one.[1]  (Docket Entry # 52, No. 1).  The

---

[1]   Question one asked the jury, "Do you find by a preponderance of the evidence that the plaintiff established all of the necessary elements of his section 1983 claim against the defendant?"  (Docket Entry # 52, No. 1).  Neither Officer Cofield nor plaintiff objected to the verdict form or the jury charge.

jury answered the section 1983 question in plaintiff's favor.

The verdict form also included a preliminary factual question to the jury regarding qualified immunity.[2]  (Docket Entry # 52, No. 11).  The jury answered affirmatively the question of whether "a reasonable policeman would have understood that the conduct of [Officer Cofield] violated the plaintiff's right to be free from an unreasonable seizure of his person under the Fourth Amendment."  (Docket Entry # 52, No. 11).  The jury charge phrased the first element of a section 1983 claim as the violation of the defendant's "constitutional right under the Fourth Amendment to be free from an unreasonable seizure of his

_____

(Docket Entry # 80, n.3).  As noted in the Memorandum and Order:

> On April 6, 2011, this court provided the parties copies of the draft charge with case citations and quotations to support the elements and the damages for all causes of action.  (Docket Entry # 50).  On April 7, 2011, the parties agreed to a modification during a charge conference. Thereafter, this court provided a final copy of the charge and the verdict form to the parties prior to closing arguments.  The parties reviewed the verdict form and expressed their satisfaction with it.  (Tr. IV-32).  After reading the finalized charge to the jury, neither party wished to be heard notwithstanding the opportunity.  (Tr. IV, p. 103).

(Docket Entry # 80, n.3).

[2]  As explained in footnote 92 in the Memorandum and Order (Docket Entry # 80), although entitlement to qualified immunity is an issue of law "'for the court to decide,'" the jury may "'determine any preliminary factual questions' so that the court can determine the legal issue of the official's reasonableness." Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 51 n.10 (1st Cir. 2010) (quoting Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 83-84 (1st Cir. 2006)).

person." (Docket Entry # 53, p. 83). Thus, like the section 1983 liability question, the qualified immunity question combined the excessive force and the false arrest section 1983 claims into a single question.

Because plaintiff did not address the qualified immunity issue in either of its post trial motions (Docket Entry ## 64 & 66), this court addressed the issue sua sponte in the Memorandum and Order (Docket Entry # 80, pp. 98-105). The Memorandum and Order denied immunity on the false arrest section 1983 claim; found in plaintiff's favor on the first prong of the immunity analysis on the excessive force section 1983 claim; and requested briefing on the second prong relative to the latter claim. After hearing oral argument, this court took the matter under advisement.

## DISCUSSION

Officer Cofield's brief initially discusses this court's determination regarding the first prong of qualified immunity, i.e., the sufficiency of the evidence to support each of the two constitutional violations. He points out, correctly, that this court construed the evidence in favor of the section 1983 general verdict without limiting that review to those facts that would support the battery verdict.[3] Because factual disputes are the

---

[3] Footnote 12 in the Memorandum and Order discusses the nature of the answers in the verdict form as constituting a series of general verdicts. (Docket Entry # 80, n.12).

province of the jury, Officer Cofield submits that this court
should not overlook the jury's finding that he did not commit a
battery for both prongs. (Docket Entry # 82).

In ruling on the post trial motions and qualified immunity,
the Memorandum and Order did not limit the facts to those
consistent with the battery verdict because Officer Cofield
failed to object to the verdict before this court discharged the
jury[4] thereby waiving an inconsistency challenge. (Docket Entry
# 80, pp. 55-57) (collecting case law); see generally
Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 9 (1st
Cir. 2007) (First Circuit follows "'iron-clad rule' that a party
that fails to raise an objection based on verdict inconsistency
before the jury is dismissed waives the issue"). As to qualified
immunity, the Memorandum and Order set out the two prongs of the
analysis[5] and explained that:

_____

[4]   See footnote one.

[5]   As accurately set out:

Determining entitlement to such immunity entails
determining: "(1) whether the facts alleged or shown by the
Plaintiff make out a violation of a constitutional right;
and (2) if so, whether the right was clearly established at
the time of the defendant's alleged violation." Estrada v.
Rhode Island, 594 F.3d 56, 62-63 (1st Cir. 2010) (internal
quotation marks and brackets omitted); see also Maldonado v.
Fontanes, 568 F.3d at 269 (discussing Pearson and adhering
to "the Court's two-part test" thereby abandoning First
Circuit's previously employed three step analysis). The
second prong entails considering "two subsidiary issues," to
wit, "(a) the clarity of the law in general at the time of
the alleged violation; and (b) the clarity of the law as

4

>Where, as here, the qualified immunity analysis arises after
>a jury verdict, the first prong examining the existence of a
>constitutional violation involves considering "the
>sufficiency of the evidence supporting a finding of
>excessive force," Raiche v. Pietroski, 623 F.3d at 36;
>Jennings v. Jones, 499 F.3d at 11 n.12,[6] or, as to the
>section 1983 false arrest claim, the sufficiency of the
>evidence that Officer Cofield had probable cause to make the
>arrest.

(Docket Entry # 80, pp. 100-101).   The Raiche decision warrants

further elaboration in light of Officer Cofield's argument.

The Raiche court addressed qualified immunity on appeal

after a jury trial.   Raiche v. Pietroski, 623 F.3d 30, 35 (1st

Cir. 2010).   Pietroski prevailed on the claims asserting a false

arrest section 1983 claim; a counterpart claim under the

Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12, §§ 11H and

_____

>applied to the case-in other words, whether a reasonable
>person in the defendant's shoes 'would have understood that
>his conduct violated the Plaintiff's constitutional
>rights.'" Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir.
>2010).

(Docket Entry # 80, p. 99-100).

[6] At this juncture, the Memorandum and Order included the
following footnote:

>As explained by the Jennings court:

>Because we now address the question of qualified immunity
>after this jury verdict for the plaintiff, our task on the
>first prong of the qualified immunity analysis is to
>"inquire whether the evidence at trial, *viewed in the light
>most favorable to the verdict*, is legally sufficient to
>support the jury's verdict that the plaintiff was deprived
>of a constitutional right."

Jennings v. Jones, 499 F.3d 2, 11 n.12 (1st Cir. 2009) (emphasis
added).

I ("MCRA"); and a common law false imprisonment claim.  Id. Raiche prevailed on the section 1983 excessive force claim, the MCRA excessive force claim and the common law assault and battery claim.  Id. at 34-35.  The court addressed the first prong of the immunity analysis by examining both the excessive force and false arrest section claims.  Id. at 38.  Elsewhere, the Raiche court reiterated that, "because our analysis comes after a jury verdict in Raiche's favor, we must consider the sufficiency of the evidence supporting a finding of excessive force."  Id. at 36 (citing Jennings v. Jones, 499 F.3d at 11 n.12).

The Jennings case confirms the requirement that, "where the jury has issued a general verdict, as it did here, we 'view[ ] the facts in the light most favorable to the verdict.'"  Jennings v. Jones, 499 F.3d at 7 (quoting Whitfield v. Meléndez-Rivera, 431 F.3d 1, 8 (1st Cir. 2005)) (brackets in original).  "This view of the facts persists throughout the three [now two] prongs of the qualified immunity analysis."  Id.  Overall, the applicable standard for addressing qualified immunity after a jury verdict entails construing the evidence "in the light most hospitable to the party that prevailed at trial," Iacobucci v. Boulter, 193 F.3d 14, 23 (1st Cir. 1999), "giving 'deference to the jury's discernible resolution of disputed factual issues.'" Raiche v. Pietroski, 623 F.3d at 35 (quoting Iacobucci v. Boulter, 193 F.3d at 23); accord Guillemard-Ginorio v.

Contreras-Gomez, 585 F.3d 508, 525 (1st Cir. 2009) (when
qualified immunity arises after trial, "evidence is 'construed in
the light most hospitable to the party that prevailed at trial,'
and deference is 'accorded the jury's discernible resolution of
disputed factual issues'"). Finally, the duty to resolve
inconsistent verdicts harmoniously if possible applies to the
qualified immunity analysis. See Raiche v. Pietroski, 623 F.3d
at 37.

The discernable facts found by the jury include the absence
of a resulting harmful or offensive contact to plaintiff. They
also encompass the finding that Officer Cofield arrested
plaintiff for one or more of the chargeable offenses without
probable cause or justification.

The reasoning for finding these discernable facts originates
in the jury's answers to questions in the verdict form. With
respect to the first discernable fact, the Memorandum and Order
details the distinctions and the overlap between the legal
elements in the claims encompassed in the verdict form. (Docket
Entry # 80, pp. 32-48). Briefly stated as the expositor of its
own order, see Iacobucci v. Boulter, 193 F.3d at 19, the
defendant favorable battery verdict required the jury to find the
absence of a resulting harmful or offensive contact because such
a harmful or offensive contact is a required element of battery
but not a section 1983 excessive force claim, a section 1983

false arrest claim or an assault claim.[7]  (Docket Entry # 80, pp. 32-39).  The plaintiff favorable answers to the common law false arrest and the liability section 1983 questions (Docket Entry # 52, Nos. 1 & 2) result in the discernable factual finding that Officer Cofield arrested plaintiff without probable cause or justification.

A.   Immunity as to False Arrest

    It is true that the Memorandum and Order denied immunity to the false arrest section 1983 claim without considering the discernable fact from the battery verdict of the absence of a resulting harmful or offensive contact.  Nevertheless, if this court had considered this discernable fact in the Memorandum and Order, the qualified immunity result for the false arrest section 1983 claim would not change.

    First, the facts with respect to the battery verdict primarily took place after the false arrest.  The absence of a harmful or offensive contact was not required to find an unconstitutional false arrest or determinative of the applicable clearly established law in December 2004.  As correctly posited by Officer Cofield (Docket Entry # 82, p. 7), a false arrest claim is distinct from an excessive force claim.  See Calvi v. Knox County, 470 F.3d 422, 431 (1st Cir. 2006); see also Raiche

_____

    [7]  The jury answered the assault question and the common law false arrest question in plaintiff's favor.

8

v. Pietroski, 623 F.3d at 37-38 ("'reasonableness' of an arrest 'depends not only on *when* it is made'—e.g., after probable cause has accrued—'but also on *how* it is carried out'") (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (emphasis in original). Second, this is particularly true where, as here, the time frames for the arrest and the alleged use of excessive force are not coextensive even though they involve the same incident.

To elaborate on the facts found by this court on the false arrest section 1983 claim relative to the denial of immunity on that claim (Docket Entry # 80, pp. 39-41 & 100-101), Officer Cofield came out from behind the front desk and yelled loudly at plaintiff a number of times that he needed to talk to him. Plaintiff was calm and repeatedly agreed to his requests. Officer Cofield then rushed over to plaintiff and was right in his face.  Officer Cofield continued screaming at plaintiff about his wife trying to file a complaint against him and that he was supposed to be at the police station at 4:00 p.m.  Plaintiff backed up but Officer Cofield kept coming towards him.  Plaintiff stopped at a point near or against a wall at which point Officer Cofield remained right in plaintiff's face.  Plaintiff did not push or touch Officer Cofield and was not raising his voice, yelling or acting in a combative manner.  Plaintiff remained compliant and repeatedly agreed to Officer Cofield's requests to speak with him.  Plaintiff was not creating a disturbance.  Even

though plaintiff did not push Officer Cofield, who had his back turned to face plaintiff's family, Officer Cofield turned back to plaintiff, told him he was under arrest (Docket Entry # 60, pp. 100-101) and proceeded to effect that arrest.  At that point[8] and prior to the use of unreasonable or excessive force, if any, and prior to plaintiff raising his voice, there was more than sufficient evidence that Officer Cofield did not have probable cause to reasonably find that plaintiff had or was committing the offenses of assault and battery on a police officer, disturbing the peace or even engaging in disorderly conduct.

Officer Cofield then proceeded to effectuate the arrest by placing his hands on plaintiff's chest whereupon plaintiff dropped to the ground like dead weight.  Plaintiff still remained compliant and calm.  Officer Cofield told plaintiff's family to leave the station and, together with Lieutenant Detective Patrick Cullity ("Lieutenant Cullity"), picked plaintiff up off the ground.  Officer Cofield told plaintiff to put his hands behind his back and again told him he was under arrest.  Raising his voice, plaintiff exclaimed, "What did I do wrong, Officer?  What did I do?"  (Docket Entry # 48, p. 27).  Officer Cofield did not

---

[8]  Clearly established law instructs that, "The constitutionality of a warrantless arrest 'depends upon whether, at the moment the arrest was made, the officer had probable cause to make it.'"  Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)) (ellipsis omitted).  To complete the record, this court briefly sets out the facts that took place after this point in time.

answer the questions.  With his wrists held by Officer Cofield, plaintiff walked to the door leading to the back of the station. Shortly before reaching the door, plaintiff fell and Officer Cofield fell on top of him.  Plaintiff's cell phone came out of his pocket and he speed dialed Laura Wilkerson ("Wilkerson"), his girlfriend at the time, and yelled into the phone, "you're hurting my back."[9]  (Docket Entry # 48, p. 33).  Shortly thereafter, Lieutenant Cullity lifted plaintiff up from the floor and he was taken through the door for booking.

For reasons set out in the Memorandum and Order, Officer Cofield's conduct was such an obvious violation of plaintiff's Fourth Amendment right that he would not have required prior case law to be placed on notice that the conduct was unlawful under the second prong of qualified immunity.  Clearly established law defined at the necessary level of specificity instructed not only that a warrantless arrest required probable cause but that probable cause was required for the offenses in this case that could be charged under the circumstances.[10]  Like Iacobucci,

---

[9]   In 1995, Plaintiff sustained a back injury from a motor vehicle accident that led to a medical discharge from the United States Army.  He continued to suffer from a bad back at the time of the December 2004 incident.

[10]   As noted, those offenses consisted of assault and battery on a police officer, disturbing the peace and disorderly conduct. The Memorandum and Order details the necessary elements of these offenses (Docket Entry # 80, nn. 26, 27 & 95) which need not be repeated.

11

plaintiff remained calm and in control.  See Iacobucci v. Boulter, 193 F.3d at 21-22 (determining whether facts and circumstances within arresting officer's knowledge were sufficiently clear such that reasonable officer would have understood arresting the plaintiff for disorderly conduct violated the plaintiff's constitutional right).  He was neither loud nor disorderly.  See Id. at 24 (noting that "Iacobucci remained cool, calm, and collected throughout" and therefore agreeing with lower court's finding "that an objectively reasonable officer would not have thought that Iacobucci was subject to arrest for disorderly conduct").  Hence, an objectively reasonable officer in Officer Cofield's "shoes 'would have understood that,'" Raiche v. Pietroski, 623 F.3d at 36, arresting plaintiff for disorderly conduct, assault and battery on a police officer or disturbing the peace violated plaintiff's constitutional right to be free from such an arrest without probable cause.  Indeed, a reasonable police officer would have understood there was no probable cause and he would not have made a mistake in this regard.  Accordingly, as determined in the Memorandum and Order and consistent with the aforementioned discernable facts found by the jury, including the absence of a harmful or offensive contact, and the jury's affirmative answer to the immunity question (Docket Entry # 52, No. 11), Officer Cofield is not entitled to qualified immunity from damages on the

12

section 1983 false arrest claim.

B.   Immunity as to Excessive Force

        Turning to the immunity determination regarding the
excessive force section 1983 claim, the Memorandum and Order
determined there was sufficient evidence that Officer Cofield
violated plaintiff's Fourth Amendment right to be free from an
unreasonable seizure of his person.   As indicated above, in
arriving at this conclusion on the first prong this court did not
consider the discernable fact that there was an absence of a
resulting harmful or offensive contact to plaintiff.

        In order to avoid qualified immunity, "both prongs must be
satisfied."   Id. at 35.   Examining the second prong, this court
will consider the discernable facts found by the jury including
the foregoing fact.[11]   Deferring to the jury's discernable facts
shows that Officer Cofield arrested plaintiff without probable
cause for the offenses of assault and battery on a police officer
and/or disturbing the peace.   (Docket Entry # 52, No. 1 & 2).
Throughout, plaintiff did not, however, experience a harmful or
offensive contact.[12]   The jury also found that a reasonable

_____

        [11]   Thus, this court will not extend the reach of Officer
Cofield's *waiver* of an inconsistency challenge to the immunity
analysis.   Resolving an inconsistency, if possible under a fair
reading of the jury's findings, however, remains an appropriate
task to conduct when resolving the immunity issue.   See Raiche v.
Pietroski, 623 F.3d at 37.

        [12]   The Memorandum and Order determined that the facts were
not sufficient for the jury to find a subsumed excessive force

policeman would have understood that the conduct of Officer Cofield violated plaintiff's right to be free from an unreasonable seizure of his person.[13] (Docket Entry # 52, No. 11).  Assuming the jury followed the instructions (Docket Entry # 53, pp. 83-84), see Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010), the affirmative answer to the foregoing immunity question (Docket Entry # 52, No. 11) encompassed either the false arrest section 1983 claim or the excessive force section 1983 claim or both.

The initial task is to attempt to resolve the jury's verdicts and the necessary facts to support the verdicts without finding an inconsistency.  See Raiche v. Pietroski, 623 F.3d at 37 (construing facts "relevant to probable cause in Pietroski's

---

section 1983 violation in answer to question one and, at the same time, also find there was no battery in answer to question four. (Docket Entry # 80, p. 46).  Rather than additionally conclude that the general section 1983 verdict was therefore in Officer Cofield's favor on the excessive force claim, the Memorandum and Order assumed the existence of a plaintiff favorable excessive force verdict and denied the post trial motions due to Officer Cofield's failure to object to the inconsistency resulting in a waiver and the lack of plain error.  See generally DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1334-1335 (Fed.Cir. 2009) (discussing inconsistency waiver and new trial motion under First Circuit law); Torres-Arroyo v. Rullan, 436 F.3d 1, 6-7 (1st Cir. 2006); Babcock v. General Motors Corp., 299 F.3d 60, 65-66 (1st Cir. 2002).  Because of the waiver, the Memorandum and Order did not limit review of the facts to those consistent with the battery verdict.  (Docket Entry # 80, pp. 55-56) (collecting case law).

[13]  The jury charge instructed the jury on the elements of an excessive force section 1983 claim based on the pre-December 2004 decision of Graham v. Connor, 490 U.S. at 396-97.

14

favor and those relevant to excessive force in Raiche's favor" to avoid inconsistency in deciding qualified immunity);[14] see also Jarrett v. Town of Yarmouth, 331 F.3d 140, 147 (1st Cir. 2003) (in context of qualified immunity, first determining jury's factual determination as to which of two theories presented in a single question the jury found in phase I based on its answer to a special interrogatory in phase II).  Officer Cofield argues that viewing the facts in the light most favorable to the verdict with deference to the jury's finding that no battery took place results in a determination that plaintiff did not prove, and therefore the jury did not find, excessive force in answering "yes" to question one.  (Docket Entry # 82, p. 3).  Given this argument, the decision in Jarrett is instructive.

The verdict in the first of the two trial phases in Jarrett asked the jury if "'Officer Peter McClelland used excessive force on Jerome Jarrett on 12/16/94.'"  Jarrett v. Town of Yarmouth, 331 F.3d at 144.  The jury answered "Yes."  Id.  The verdict encompassed two theories or versions of the facts of excessive force with respect to Officer McClelland's release of a police

---

[14]    Quoting Gallick v. Baltimore & O. R. R. Co., 372 U.S. 108, 119 (1963), in a parenthetical, the Raiche court further noted, "'[I]t is the duty of the courts to attempt to harmonize' a jury's findings 'if it is possible under a fair reading of them.'"  Raiche v. Pietroski, 623 F.3d at 37.  The Memorandum and Order assumed the existence of a subsumed excessive force verdict in question one (Docket Entry # 52, No. 1) and, as a result, could not reconcile the inconsistency between that verdict and the battery verdict (Docket Entry # 80, pp. 47-48).

dog.  The first version was "that Officer McClelland ordered [the
dog] to bite and hold *after* Jarrett surrendered himself," a
finding that would constitute excessive force.  Id. at 147
(emphasis in original).  The second version was that Officer
McClelland released the dog after issuing verbal warnings in
order "to apprehend a fleeing suspect," a finding that would not
necessarily amount to excessive force.  Id.  The court resolved
the ambiguity by looking at the jury's answer to a question
presented in the second phase.  That question asked the same jury
if Officer McClelland acted "'in accordance with the Town of
Yarmouth (sic) policy and procedure when he released the dog on
December 16, 1994?'"  Id. at 144.  The jury answered "Yes"
notwithstanding its earlier conclusion "in Phase I that Officer
McClelland used excessive force in apprehending Jarrett on the
night in question."  Id.  Because the factual record did not
suggest that town policies "permit[ted] an officer to command a
police dog to attack a suspect who ha[d] already surrendered,"
the court found that, "no reasonable jury could accept Jarrett's
version of the facts—that he had already surrendered when Officer
McClelland released [the dog]—and simultaneously conclude that
McClelland acted in accordance with the policies and procedures
of the Town of Yarmouth."  Id. at 147.  Thus, because the jury
found that Officer McClelland acted in accordance with town
policies, it  "must have implicitly found that he issued the

proper verbal warnings to Jarrett before releasing [the dog]." Id. at 148.

Here too, the jury's answer to the battery question (Docket Entry # 52, No. 4) yields the finding that no reasonable jury could find excessive force in answer to question one.  (Docket Entry # 80, p. 46).  The plaintiff favorable false arrest verdict (Docket Entry # 52, No. 2 & 3) confirms that the jury answered question one with a plaintiff favorable false arrest finding and a defendant favorable excessive force finding.

To elaborate, question one encompassed the false arrest and the excessive force section 1983 claims.  Like Jarrett, the jury's other responses in the verdict form supply the answer as to whether the jury accepted both or either claim in answering question one.[15]  In particular, the difference between the elements of the excessive force claim and the defendant favorable battery verdict is that the defendant favorable battery verdict included the implicit finding that plaintiff did not experience a harmful or offensive contact.  (Docket Entry # 80, pp. 35-36 & n.38).  No set of facts, however, supports both a plaintiff favorable excessive force finding and a finding that plaintiff

_____

[15]  The jury heard ample evidence regarding both claims.  If there were no other verdicts to elucidate what the jury found or if there was an inconsistency with an objection, a new trial might be warranted.  See Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 30-31 (1st Cir. 2004); Davis v. Rennie, 264 F.3d 86, 105-107 (1st Cir. 2001).

17

did not experience a harmful or offensive contact.  (Docket Entry

# 80, p. 47).  In light of the overlap in the reasonableness of

force analysis, the battery verdict dispels any conclusion that

the jury found in plaintiff's favor on the subsumed excessive

force claim in answering question one.  See Carter v. Rogers, 805

F.2d 1153, 1158 (4th Cir. 1986) ("we do not perceive on the facts

of this case how the factfinder could find for Carter on one

cause of action [assault and battery] and not on the other

[section 1983 excessive force]" because "[u]nreasonable or

unnecessary force was the touchstone of both causes of action");

Wargo v. Municipality of Monroeville, PA, 646 F.Supp.2d 777, 789

(W.D.Pa. 2009) ("[b]ecause no reasonable jury could conclude that

the force used by [the defendant police officers] was excessive,

no underlying tort claims of assault and battery against" the

defendants "would lie"); see also Raiche v. Pietroski, 623 F.3d

at 40 ("our determination of the reasonableness of the force used

under § 1983 controls our determination of the reasonableness of

the force used under the common law assault and battery claims");

Aczel v. Labonia, 584 F.3d 52, 57 (2nd Cir. 2009) (if a "police

officer uses excessive force in violation of a plaintiff's

constitutional rights, it is to be expected that the victim will

suffer harm proximately caused by the excessive force");

Stallworth v. City of Cleveland, 893 F.2d 830, 832-833 (6th Cir.

1990) (jury's affirmative answer to question that officer used

18

excessive force was inconsistent with jury's negative answer to question of whether the plaintiff established that officer intentionally made physical contact with victim with respect to assault and battery claim).

Confirming the defendant favorable excessive force finding in question one is the jury's finding that plaintiff established all of the necessary elements of a common law false arrest claim against Officer Cofield and its finding that Officer Cofield did not satisfy his burden to show justification for the arrest.[16] (Docket Entry # 52, No. 2 & 3).   The instructions informed the jury that the justification requirement equated to, or substantially overlapped with, the constitutional requirement of

---

[16]   The jury answered "yes" to the following question:

II.   <u>FALSE ARREST CLAIM</u>

   2.   Do you find by a preponderance of the evidence that the plaintiff established all of the necessary elements of his false arrest claim against the defendant?

Answer:   _____ (yes or no).

(Docket Entry # 52, No. 2).   It then answered "no" to the immediately following question:

   3.   Do you find by a preponderance of the evidence that the defendant satisfied his burden in showing a justification for the arrest?

Answer:   _____ (yes or no).

(Docket Entry # 52, No. 3).

probable cause.[17]   Thus, it is more than reasonably certain that
the jury found in plaintiff's favor on the false arrest claim

---

[17]   This court instructed the jury that:

In satisfying the burden to show a justification, the
defendant does not have to show that the offense had
actually been committed.   Rather, it is enough if the
defendant police officer believed upon reasonable cause that
the plaintiff had committed an offense that could be charged
under the circumstances.

The requirement of reasonable grounds fairly equates to or
substantially overlaps with the constitutional requirement
of probable cause, which I have previously described to you.
Thus, justification turns upon whether the defendant proves
by a preponderance of the evidence the presence of probable
cause to justify the arrest.

I've already instructed you on how to determine probable
cause for the offense of assault and battery on a police
officer and for the offense of disorderly conduct, and I
refer you to those instructions.   Probable cause need only
exist as to one of these offenses.

(Docket Entry # 53, pp. 46-47).   Footnote 50 in the draft
instructions sets out the following applicable law:

Julian v. Randazzo, 403 N.E.2d 931, 934 (Mass. 1980)
("burden was on the defendants to prove justification" and
"[t]hey did not need to show that a felony had actually been
committed; it was enough if they believed upon reasonable
cause that the person being arrested had committed a
felony").   "Although lack of probable cause is not an
element to a false arrest claim, Calero-Colon v.
Betancourt-Lebron, 68 F.3d 1, 3 n.6 (1st Cir. 1995), its
absence provides a sufficient basis to dismiss a false
imprisonment or false arrest claim."   Felix v. Lugas, 2004
WL 1775996 at *2 n.6 (D.Mass. March 2, 2004).   "In
other words, 'probable cause need only exist as to any
offense that could be charged under the circumstance.'"
LaFrenier v. Kinirey, 478 F.Supp.2d 126, 136 (D.Mass. 2007)
(quoting United States v. Bizier, 111 F.3d 214, 219 (1st
Cir. 1997)).

(Docket Entry # 50, pp. 46-47).

20

encompassed in the section 1983 general verdict.  In sum, by
virtue of the overlapping and distinct elements of the claims and
the jury's answers in the verdict form, the discernable facts
found by the jury for purposes of the second prong include that
Officer Cofield did *not* engage in excessive and unreasonable
force although he did engage in a false arrest without probable
cause.  Similarly, there is no inconsistency between the
defendant favorable battery verdict in question four and the
section 1983 verdict in question one.[18]

In addition to the jury's discernable facts, this court
adds, as previously noted, that after Officer Cofield first told

_____

[18]  If, as noted above, the verdict form establishes that the
jury found in Officer Cofield's favor on the excessive force
section 1983 claim and in plaintiff's favor on the false arrest
section 1983 claim, the result of the denial of the post trial
motions is the same.  Because there is no plaintiff favorable
excessive force section 1983 verdict or claim to attack, Officer
Cofield is not entitled to a judgment notwithstanding that
assumed "verdict."  Officer Cofield's motion for a new trial on
the excessive force section 1983 "verdict" in plaintiff's favor
would be unavailing because there is, in fact, no such verdict.
The jury's section 1983 award is attributable solely to the false
arrest section 1983 claim with ample and sufficient evidence to
support it.  (Docket Entry # 80).
     As to this court's denial of plain error, such error
requires the presence of four factors.  See Gray v. Genlyte
Group, Inc., 289 F.3d 128, 134 (1st Cir. 2002) (citing United
States v. Olano, 507 U.S. 725, 735-736 (1993)).  This court's
finding on the third factor, to wit, that the error in accepting
the inconsistent verdicts likely altered the outcome by affecting
the results of the jury's deliberations (Docket Entry # 80, p.
48-49), was not necessary or essential to this court's decision
to reject plain error due to the absence of the fourth factor
(Docket Entry # 80, pp. 49-51).  As such, it is not the law of
the case.  See Arcam Pharmaceutical Corp. v. Faria, 513 F.3d 1, 3
(1st Cir. 2007).

plaintiff he was under arrest, Officer Cofield put his hands on plaintiff's chest at which point plaintiff dropped to the ground. Officer Cofield and Lieutenant Cullity picked plaintiff up from the ground.  (Docket Entry # 48, pp. 26-27).  Officer Cofield then walked in back of plaintiff holding both of plaintiff's wrists.  As they approached the door leading to the back of the police station, plaintiff fell and Officer Cofield fell on top of him.  After plaintiff spoke briefly and excitedly to Wilkerson on his cell phone, Lieutenant Cullity picked plaintiff up from the floor and escorted him to the booking desk with Officer Diane Gill.  At this juncture, Lieutenant Cullity told Officer Cofield to step away.  Plaintiff remained upset but eventually calmed down as the booking process progressed.[19]  Such facts are consistent with the battery verdict and also support a finding that Officer Cofield did not use excessive or unreasonable force.[20]

---

[19]    As to the second immunity prong, plaintiff's reliance on the facts this court found on pages 60 to 62 of the Memorandum and Order (Docket Entry # 81, p. 4) is misplaced.  Those facts constituted facts the jury could find to support a plaintiff favorable excessive force claim irrespective of the discernable facts that support the battery verdict.  (Docket Entry # 80, pp. 55-56 & 60-62).  In other words, those facts were not limited to the facts that support both the battery verdict and a plaintiff favorable excessive force finding.  (Docket Entry # 80, p. 55).

[20]    Officer Cofield's new argument to obtain "judgment as a matter of law on plaintiff's [assumed] excessive force claim" raised in a footnote (Docket Entry # 82, n. 4) is waived.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

Clearly established law at the time of the December 2004 incident prohibited the use of excessive force under the Fourth Amendment's right to be free from an unreasonable seizure of the person.[21]  See Graham v. Connor, 490 U.S. at 394-395.  "Where the excessive force claim arises in the context of an arrest of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons against unreasonable seizures' of the person."  Jarrett v. Town of Yarmouth, 331 F.3d at 148 (internal ellipses omitted).  The test employed by the Supreme Court in Graham "'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  Jarrett v. Town of Yarmouth, 331 F.3d at 148 (quoting Graham v. Connor, 490 U.S. at 396); accord Dean v. City of Worcester, 924 F.2d 364, 368 (1st Cir. 1991). Under the objective reasonableness standard, "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'"  Graham v.

---

[21]  Although perhaps unnecessary in light of the factual finding that Officer Cofield did not engage in excessive and unreasonable force, this court articulates the clearly established law to complete the record.

Connor, 490 U.S. at 396.  The reasonableness calculus thereby embodies an "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Id. at 396-397.

The Graham decision and foregoing principles, however, only set out "the *general* proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."  Saucier v. Katz, 533 U.S. 194, 201-202 (2001) (emphasis added).  Defining this clearly established law with the requisite degree of specificity entails considering cases involving materially similar conduct such as the use of similar force in the context of a warrantless arrest without probable cause.  See Jennings v. Jones, 499 F.3d at 16 (law is clearly established "if courts have previously ruled that materially similar conduct was unconstitutional").

A First Circuit case prior to December 2004 analyzed the Graham factors and found that the police officers engaged in excessive force in the context of a warrantless arrest for criminal trespass in a restaurant.  See Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 346 & 353 (1st Cir. 1995).  There, a police officer told the arrestee "she was being placed under arrest" and then, without asking the arrestee

to get up from the table, the officer "abruptly pulled" the arrestee "from the booth, and across a table, with sufficient force to bruise her legs, then handcuffed [her] with her hands behind her back and dragged and carried [her] to a police cruiser and pushed [her] inside."  Id. at 353.

In another First Circuit case prior to the December 2004 incident, the court determined that facts involving an inactive, previously executed arrest warrant survived a motion to dismiss a false arrest section 1983 claim.  See Pena-Borrero v. Estremeda, 365 F.3d 7, 12 (1st Cir. 2004).  The court, however, found the facts insufficient to withstand the motion to dismiss an excessive force section 1983 claim even though the officers pushed the plaintiff's arms behind his back to almost his neck and the plaintiff told the officers "'they were hurting him.'" Id.  The arrest however took place in the middle of the night in unknown circumstances as the officers entered the plaintiff's home, id., thus warranting a greater use of force than needed in a police station.  In short, in light of the Alexis and Pena-Borrero decisions, prior existing case law was not so clearly established that it gave Officer Cofield fair notice that it was unconstitutional to exert the force he used on December 5, 2004. Likewise, Officer Cofield's conduct was not an obvious violation of the Fourth Amendment's prohibition against the use of excessive force.

Applying the clearly established law in the circumstances of this case and as previously determined, Officer Cofield put his hands on plaintiff's chest whereupon plaintiff fell to the ground like dead weight.  Officer Cofield and Lieutenant Cullity picked plaintiff up from the ground and Officer Cofield proceeded to hold plaintiff's wrists while walking him across the room to the door.  Without making a harmful push to plaintiff's back, plaintiff fell to the ground and Officer Cofield fell on top of plaintiff.  During the ensuing exchange on the ground, an objectively reasonable officer would not have believed his conduct violated plaintiff's clearly established right to be free from unreasonable or excessive force.  In compliance with Lieutenant Cullity's instruction, Officer Cofield then stepped away from plaintiff.  In short, assuming the jury found in plaintiff's favor, Officer Cofield is entitled to qualified immunity for the excessive force claim under the second prong of the immunity analysis.

Turning to the amount of damages subject to immunity, the jury awarded past compensatory damages in the amount of $26,188.30.  (Docket Entry # 52, No. 7).  The jury attributed $26,188.30 of the total past compensatory damages awarded in question seven ($26,188.30) entirely to the section 1983 claim above and beyond any damages awarded for the state law claims. (Docket Entry # 80, p. 91; Docket Entry # 52, No. 7 & 12).

26

Two reasons entitle plaintiff to the entire award.  First,
Officer Cofield's immunity against a monetary award on the
excessive force section 1983 claim is unavailing because, as
explained above, there was no plaintiff favorable excessive force
section 1983 verdict.  See Halcomb v. Woods, 767 F.Supp.2d 123,
140 (D.D.C. 2011) ("[q]ualified immunity is relevant only to
those constitutional claims that were decided against Mr.
Woods").

Second, even if the jury awarded damages on an excessive
force claim, the amount of past damages awarded by the jury on
the false arrest section 1983 claim are the same as those
awarded, if any, on the section 1983 excessive force claim.  The
discernable facts determined by the jury include the absence of a
harmful or offensive contact thus eliminating recovery for the
chiropractic bills.  The instructions repeatedly advised the jury
not to award damages that duplicate damages for the same injury
awarded on another claim.  (Tr. IV-92, 97, 99 & 101).  Assuming
that the jury followed these instructions repeated four times,
see Morales-Vallellanes v. Potter, 605 F.3d at 35, the jury did
not award damages that duplicated the same injury in arriving at
the $26,188.30 figure representing past section 1983 damages.
Where, as here, damages for the false arrest section 1983 verdict
duplicate and entirely overlap damages awarded, if any, for the
excessive force section 1983 "verdict," plaintiff may "select the

27

body of law under which the damages will be paid."[22]  <u>Foley v.</u>
<u>City of Lowell, Massachusetts</u>, 948 F.2d 10, 17 (1st Cir. 1991).

The award of future damages ($75,000.00) is not subject to immunity insofar as it represents an award on the state law assault and false arrest verdicts.  As explained in the Memorandum and Order, the evidence concerning future compensatory damages for emotional and mental pain and suffering was not specific to any one claim.  (Docket Entry # 80, pp. 95-96).  Thus, an award of future mental pain and suffering for the false arrest section 1983 claim encompasses and duplicates future damages awarded, if any, for the use of excessive force.

CONCLUSION

Qualified immunity is warranted on the false arrest section 1983 verdict but not on the excessive force section 1983 claim subsumed in question one of the verdict form.  A final judgment shall issue in accordance with this opinion.  This court will address the collateral matter of attorneys' fees at a hearing on December 19, 2012, at 2:30 p.m.

   /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[22]  The Memorandum and Order describes the testimony regarding past emotional pain and suffering for the false arrest. (Docket Entry # 80, pp. 87-88).

28